[No. A118431. First Dist., Div. Three. Oct. 31, 2008.]

JOHN V. APOLLO, Plaintiff and Appellant, v.
ELIZABETH GYAAMI, as Food Administrator I, etc., Defendant and
Respondent.

JOHN V. APOLLO, Plaintiff and Appellant, v.
DENNIS HAWLEY, as Staff Physician, etc., Defendant and Respondent.

JOHN V. APOLLO, Plaintiff and Appellant, v.
MS. MANN, as Registered Nurse, etc., Defendant and Respondent.

## COUNSEL

John V. Apollo, in pro. per., for Plaintiff and Appellant.

Edmund G. Brown, Jr., Attorney General, David S. Chaney, Chief Assistant Attorney General, Frances T. Grunder, Assistant Attorney General, Michael W. Jorgenson and Julianne Mossler, Deputy Attorneys General, for Defendant and Respondent Elizabeth Gyaami.

No appearance for Defendant and Respondent Dennis Hawley and for Defendant and Respondent Ms. Mann.

## OPINION

**JENKINS, J.**—Appellant John V. Apollo appeals from the judgment entered against him after the trial court granted a motion for summary judgment filed by respondent Elizabeth Gyaami, R.D., and dismissed defendants Dennis Hawley, M.D., and Ms. Mann, R.N., from the case for lack of proper service.[1] For reasons discussed below, we reverse the judgment and remand to the trial court for further proceedings consistent with appellant's right of meaningful access to the courts to prosecute a bona fide civil claim.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant, a state prisoner housed at the California Medical Facility (CMF) in Vacaville, brought a lawsuit seeking $250,000 in damages against respondent for personal injury. Shortly thereafter, appellant filed nearly identical lawsuits seeking the same amount in damages for personal injury against Dr. Hawley and Nurse Mann. The trial court subsequently consolidated these three lawsuits into a single lawsuit in the interest of judicial economy.

### I. Appellant's Allegations.

Appellant's lawsuit stemmed from the refusal of CMF personnel to provide him with a medically prescribed special diet when he was transferred from Folsom State Prison on a "medical override" due to his medical condition of diverticulitis of the colon. Shortly before his transfer to CMF, the staff physician at Folsom State Prison made the following order: "This patient has a chronic dietary problem that he needs a special diet in a medical facility. No expiration." Consistent with that order, after appellant arrived at CMF, two physicians on at least three separate occasions ordered that appellant receive a high fiber, low fat, no dairy, no spice, and minimal meat (chicken and fish only) diet. After several weeks, however, appellant was still not receiving the special diet, and thus went to speak with respondent, a registered dietician and the head dietician at CMF.

---

[1] Defendants Nurse Mann (whose full name does not appear in the record) and Dr. Hawley have not appeared on appeal. We thus refer to Gyaami as respondent, and Gyaami, Nurse Mann and Dr. Hawley, collectively, as defendants.

Respondent advised appellant that, to receive a special diet under the current state policy, he would need to take a "psych-medication."[2] When appellant told respondent that he had been transferred to CMF on a medical override due to his colon condition, and that two different physicians at CMF had prescribed a special diet, respondent replied: "They do not know what they are doing, as I am the dietician, and I know what you can and can not [sic] have!" Respondent thus refused to comply with the orders of appellant's physicians. Respondent did offer to order appellant a vegetarian diet, but when appellant told her he was not a vegetarian, she told him he would need to return to the medical clinic.

At the medical clinic, appellant spoke with Nurse Mann, and explained to her that, based on his medical condition, several physicians had prescribed a special diet for him, but that CMF personnel would not provide it to him. Nurse Mann initially advised appellant that she could not help him, but then, at appellant's request, she called respondent to discuss his situation. When Nurse Mann finished the call, she walked over to talk to Dr. Hawley, a physician, who had his back to appellant while talking to another prisoner. Dr. Hawley, who did not examine or talk to appellant or review his medical records, then stated, according to appellant, "Hell no, I am not going to order another vegetarian diet to another prisoner, as all they are doing is manipulating medical staff."

After further discussion, Nurse Mann returned to appellant and advised him that Dr. Hawley had ordered him a special diet. Appellant then reviewed the medical referral order that Nurse Mann had placed on the counter in front of him, which stated "personal choice" and "vegetarian." Appellant advised Nurse Mann that he was not a vegetarian and that such diet was not his personal choice, but rather that he had a medical condition of the colon that required a special diet. Nurse Mann then crossed out with a black marker the words "personal choice" on the referral order, and advised appellant that respondent had told her that the physician should order him a vegetarian diet. When appellant continued to try to explain to Nurse Mann that he was not a vegetarian and that two other physicians had prescribed for him a specially formulated diet, Nurse Mann became upset and ordered him to leave.

## II. *Appellant's Administrative Claim.*

Appellant first filed an administrative claim with the prison regarding his right to receive a medically prescribed special diet, and then, after his claim was denied, filed an administrative appeal. As part of that review process,

---

[2] Respondent similarly advised appellant's physician in a written note: "Per state policy, a [high] fiber diet is only available for [prisoners] on clozapine. Low fat & no dairy & fish only is also not available per state policy."

appellant was directed to talk to CMF's mainline food manager, who explained to appellant that he had been ordered a regular mainline vegetarian diet by respondent. When appellant again stated that he had been transferred to CMF for medical reasons that required a specially formulated, medically prescribed diet, and that several physicians had ordered him such a diet, the food manager advised that he and respondent were in charge of prisoners' meals, not the physicians or the chief medical officer at CMF. The food manager further explained that he and respondent took orders from the state, not from medical staff. Appellant's prison-level administrative appeal was thereafter denied.

Accordingly, having exhausted his prison-level administrative remedies, appellant filed a claim in June 2002 with the California Victim Compensation and Government Claims Board (the Board). In that claim, appellant explained that, as a result of defendants' failure to provide a specially formulated, medically prescribed diet, he was suffering from chronic light-headedness, dizziness, weakness, fatigue, stomach cramps, diarrhea and a "swelled stomach."

On August 1, 2003, the Board advised appellant that it would recommend rejecting his claim "because the claim raises complex issues of fact and law that should be resolved through formal legal action. . . . The Board's rejection of your claim will allow you to initiate litigation should you wish to pursue this matter further." On September 12, 2003, the Board notified appellant by letter that his claim had been rejected, and that he had six months from the date the letter was personally delivered or deposited in the mail to file a court action on his claim.

III.  *This Lawsuit.*

On March 9, 2004, appellant, proceeding in propria persona, attempted to file at least one complaint based on the above allegations against the three defendants. The trial court clerk, however, would not file the complaint because appellant failed to use the proper legal forms, and thus returned it to him, along with the proper forms. On April 4, 2004, appellant returned the completed forms to the trial court, as well as a request that the clerk send him materials "explaining the local rules of Solano Superior Court."[3] It is not clear from the record what happened to appellant's completed forms.

---

[3] A copy of appellant's initial complaint or complaints is not part of the record on appeal. However, there is in the record a letter from appellant to the trial court clerk, file-stamped June 14, 2004, which states: "To the Clerk of the Court, Mam/Sir, I am now typing [*sic*] this letter to you, as it has now been over two (2) months since I had returned back to you, my claim along with the cover-sheet & other forms that you had sent to me to fill out! I had originally sent in my claim to you back in March/9/04 of which you, then sent it back with the cover-sheet & other forms to fill out, of which was in March/22/04! I then returned everything

On October 19, 2004, appellant, again proceeding in propria persona, filed the operative complaints in this lawsuit against "Dr. D. Hawley, M.D."; "E. Gayaomi, R.D."; and "Ms. Mann, R.N." asserting claims of medical malpractice and fraud and seeking $250,000 from each in damages for personal injury. Thereafter ensued a lengthy litigation process, much complicated by appellant's incarceration, lack of funds and lack of legal representation, which we attempt to reconstruct below.

### A. *Appellant's Repeated Attempts to Serve Defendants.*

Beginning in January 2005, appellant attempted to effectuate service of the summons and complaints on each of defendants, first personally, which prison officials prohibited, and then by delivering copies of the documents to the sheriff's office. In early April 2005, appellant was informed by the sheriff's office that the service attempted on Nurse Mann and Dr. Hawley was unsuccessful because they were no longer employed at CMF, and that the service attempted on "E. Gayaomi, R.D." was unsuccessful because such person did not work at CMF.

On April 4, 2005, appellant moved to amend the complaint to correct the spelling of respondent's name from Gayaomi to Gyaami. The trial court granted his motion on April 14, 2005. Two weeks later, on April 28, 2005, the trial court issued an order to show cause why the lawsuit against respondent should not be dismissed and appellant sanctioned for his failure to file a case management report, to timely serve respondent with a copy of the summons and complaint, and to appear at the April 26, 2005, case management conference.

Appellant responded to the order to show cause on May 9, 2005, explaining that, as a state prisoner, he could not appear at the conference without a court order, and that he had not filed a case management report because he was waiting for the court to rule on his April 20, 2005, motion for an extension of time to serve all defendants, whom he could not locate. On May 23, 2005, appellant requested another extension of time to serve defendants, explaining he was still unable to locate Nurse Mann and Dr. Hawley, but that he had been told Dr. Hawley was now working at the Solano State Prison and Nurse Mann was working at an unknown outside hospital. Appellant further

filled out that you had requested with the claim, on April/4/04, and have been waiting patiently since then!? [¶] I would now very much like to know, what the status is with it, the claim, and if I may receive a copy back, that I had sent to the court w [*sic*] an envelope self-addressed, that I had (enclosed) with the original one & copy to the court! [¶] This would be truly appreciated by me, as well if I may receive any type of material explaining the local rules of Solano County Superior Court, would also be very appreciated by me, . . . [¶] I thank you, sincerely and remain respectfully yours, John V. Apollo, Plaintiff/Pro Se."

explained that, as an indigent state prisoner without counsel, he had limited means and ability to effectuate service, and that he was "in dire need of professional (legal) assistance to assist him with this claim."[4] On the same day, the trial court granted appellant's motion for extension of time to serve defendants, and continued the hearing on the order to show cause to August 2, 2005, at 8:30 a.m.

On May 31, 2005, on appellant's motion, the trial court ordered consolidation of these three lawsuits in the interest of judicial economy. However, on August 3, 2005, after appellant failed to appear at the previous day's hearing on the order to show cause, the trial court ruled that the case would be dismissed due to appellant's failure to timely serve defendants.

On August 15, 2005, respondent was finally served by the sheriff's office with a copy of the summons and complaint.

On September 16, 2005, appellant filed a case management statement. In his statement, appellant reiterated the allegations of medical malpractice, negligence, and fraud that were raised in the complaint, and noted that he had still been unable to locate Nurse Mann and Dr. Hawley to effectuate service. Appellant also raised new allegations of violations of his federal constitutional rights under the Eighth and Fourteenth Amendments based on defendants' deliberate indifference to his medical needs. In addition, appellant requested that the trial court consider his "dire need for the appointment of counsel" to represent him. Appellant noted that he anticipated filing a motion for appointment of counsel "as the plaintiff is an indigent prisoner who is in dire need of (legal) assistance-expertise to fight this case."

Also on September 16, 2005, the trial court vacated its order dismissing the case, but gave notice that any defendant not properly served by October 25, 2005 (the date scheduled for a further case management conference), would be dismissed.

On October 27, 2005, the trial court clerk received, but declined to file, a case management statement submitted by appellant. The clerk did file a notice of action submitted by appellant advising that, on October 5, 2005, he mailed to the sheriff's office copies of the summons, complaint, and case management statement to be served on Nurse Mann and Dr. Hawley.

On November 14, 2005, the trial court received a copy of a letter from the sheriff's office, civil division, to appellant, advising that it was unable to

---

[4] Appellant explained that, as a prisoner, he was generally permitted to perform legal work (including making copies) only one day per week for two hours (or four hours if required to meet a court deadline), and only if the law library remained open. He further explained the law library sometimes closes for administrative or security reasons, such as the absence of library staff or a prison lockdown.

process his request for service of the summons on Nurse Mann due to appellant's failure to check the appropriate box on page one under "Notice to the Person Served: You are served."

On January 10, 2006, appellant filed two proofs of service in the trial court stating that, on November 17, 2005, the sheriff had served copies of the summons, complaint and case management statement on Nurse Mann and Dr. Hawley by leaving such copies with William Sinkovich, litigation coordinator, at the CMF.

On August 25, 2006, respondent filed an answer to the complaint. Apparently unaware of that fact, on September 5, 2006, appellant requested entry of default against defendants, explaining that none of them had answered the complaint, which had been served on respondent on August 15, 2005, and on Dr. Hawley and Nurse Mann on November 17, 2005. The trial court clerk declined to file appellant's request for entry of default on the ground that respondent had filed an answer.[5]

### B. *Respondent's Motion for Summary Judgment and Hearing.*

On October 17, 2006, appellant filed another case management statement, which again described the case as one for medical malpractice, fraud, negligence and violations of the Eighth and Fourteenth Amendments, and expressed his "dire need" for appointed counsel. The case management conference was held October 24, 2006. The minutes of court state that "plaintiff is incarcerated and was offered the opportunity to appear via court call. He has not set up the appearance with court call."[6] The trial court then set a schedule for respondent's summary judgment motion, and ordered that all defendants not already served be dismissed from the case.

On October 30, 2006, respondent moved for summary judgment on three grounds: (1) appellant's complaint was barred because it was not filed within the period of time prescribed by the Government Claims Act, Government Code section 810 et seq.,[7] (2) appellant failed to plead any statutory basis for tort liability against respondent, as required under section 820.2, and

---

[5] In fact, this was appellant's third attempt to request entry of default, his first two attempts, on June 7, 2006, and August 16, 2006, having been rejected by the trial court clerk for failure to comply with proper court procedures. Appellant noted in his ultimate request that he "had not heard from this honorable court since Nov/5/05 until just recently, after having put in a request for entry of default for the third time to the clerk of the court!"

[6] Counsel for Dr. Hawley was present at the hearing, but did not make an appearance in the case given that her client had not been properly served. We found no evidence in the record indicating that Nurse Mann or anyone representing her interests ever made an appearance in this case.

[7] Unless otherwise stated, all statutory citations herein are to the Government Code.

(3) respondent was entitled to qualified immunity for the conduct alleged in the complaint pursuant to section 845.6. The motion was noticed for hearing on February 7, 2007, at 8:30 a.m.

On January 17, 2007, the trial court continued a status conference hearing scheduled for January 29, 2007, to February 7, 2007, at 8:30 a.m. On February 1, 2007, appellant mailed, with proof of service, a letter to the trial court requesting a court order to permit him to call into the court at 8:30 a.m. for the February 7 hearing. In that letter, which was not filed until February 7, appellant explained again that he was a state prisoner and would not be permitted to appear telephonically for the hearing without a court order.

On February 7, 2007, the hearing on respondent's summary judgment motion was called at 10:00 a.m. rather than 8:30 a.m.[8] The reporter's transcript reflects that respondent's attorney appeared in person on her behalf, and that a call was made to the prison so that appellant could appear telephonically. When the court asked whether appellant was on the telephone, an unidentified speaker from the Department of Corrections and Rehabilitation advised that "[t]he inmate is coming back from his housing unit with his documentation." The following exchange then occurred:

"[The Court]: Okay. Well. We are going to proceed. It is now 9 minutes after 10:00. And if he is late, that is not our fault. All right. There was a tentative ruling in this matter yesterday. . . . It is my understanding that there has not been any written opposition, proper written opposition filed to this motion; is that correct?

"[Respondent's Attorney]: That's correct.

"[The Court]: All right. The tentative ruling is adopted. The motion for summary judgment is granted on all three grounds."

Thus, without hearing argument and in appellant's absence, the trial court granted respondent's summary judgment motion on all three grounds.

On February 14, 2007, the trial court clerk signed a "notice of returned document" addressed to appellant, advising that the trial court would not accept the legal papers he filed in opposition to respondent's summary judgment motion. Such opposition papers included a "motion of objection," memorandum of points and authorities, statement of disputed facts, declaration of plaintiff, request for judicial notice of the records of the Board,

---

[8] It is not clear from the record why the time of the hearing was changed from 8:30 a.m. to 10:00 a.m.

"motion of objection to defendant's [proposed] order of dismissal" and motion for default judgment. According to the attached proof of service, appellant delivered these papers to the prison mailroom on January 31, 2007, but they were not received by the court until February 9, two days after the summary judgment hearing. In returning the papers to appellant, the clerk noted: "Matter was dismissed with prejudice. I am returning your motion of objection to defendant's motion for summary judgment."

On February 22, 2007, the trial court ordered dismissal of the case with prejudice. On the same day, a letter drafted by appellant was filed with the trial court. The letter, which appellant had delivered to the prison mailroom on February 14, 2007, stated that he had received no notice that the February 7 hearing had been moved from 8:30 a.m. until 10:00 a.m., or court order permitting him to be on a court call at that time. Appellant further explained that the prison litigation officer had found him in the law library at 10:00 a.m. on February 7, and informed him that he had a "court call." Appellant told the litigation officer he would need to return to his housing unit to retrieve his legal paperwork, which the litigation officer instructed him to do. However, when appellant reached the guard on duty at the housing unit, he was told he must wait for the next "unlock" at 10:30 a.m. to enter his cell. Appellant asked the guard whether the litigation officer had called to inform him that appellant would need to return quickly to his housing unit to retrieve legal papers for a court call, to which the guard replied "No." Appellant was eventually permitted to return to his cell to get his paperwork when the litigation officer arrived and explained what was occurring to the guard. Appellant then rushed back to the law library and was finally permitted to answer the court call, only to be told by the trial court clerk that the hearing was over and that his case had been dismissed.

On February 27, 2007, the trial court signed an order of dismissal proposed by Dr. Hawley's attorney.

C. *Appellant's Repeated Attempts to Move to Vacate or for Reconsideration of the Trial Court's Orders.*

On March 16, 2007, appellant filed a "motion to vacate the defendant's (proposed) order of dismissal." In his motion, appellant "declare[d] under the penalty of perjury" that Dr. Hawley had in fact been served, as reflected by the proof of service he received from the sheriff's office in November 2005, attached as exhibit A. Appellant further declared "he is a state prisoner, and that once delivered to this medical facilities [*sic*] litigation officer, the summons and complaint is officially served to the defendants, and is beyond the control of this prisoner/plaintiff. [¶] . . . [B]efore the above . . . had taken place, the prisoner/plaintiff tried to serve the defendants himself, and was

denied this by both his counselor, CC-I Harley and the litigation officer himself, Mr. B.C. Williams."

Appellant also attached as an exhibit a letter to the trial court from CMF's litigation secretary dated November 22, 2005, stating: "Enclosed please find the Summons for R.N. Mann and D. Hawley, M.D., they are no longer employed by the California Medical Facility." According to appellant, he did not receive a copy of this letter until October 31, 2006, nearly a year after it was sent to the trial court and a week after the court's October 24, 2006, deadline for serving defendants in order to avoid dismissal. To support his claim, appellant attached to his motion a copy of the envelope from the trial court to appellant dated October 31, 2006, and a copy of the November 22, 2005, letter with an attached note stating: "This was mailed to the court in error. This should have been mailed to you."

On March 19, 2007, appellant attempted to file a notice of appeal. The trial court clerk returned the notice unfiled because it failed to comply with court procedures.

On March 28, 2007, the trial court filed notice that the order granting respondent's summary judgment was entered on February 27, and that judgment in favor of respondent was entered on March 15.

On March 29, 2007, appellant filed a motion to vacate or for reconsideration of the trial court's order granting summary judgment. Attached to his motion were the papers he originally mailed to the trial court in opposition to summary judgment on January 31, 2007, which, as set forth above, included a "motion of objection," memorandum of points and authorities, statement of disputed facts, declaration of plaintiff, request for judicial notice of the records of the Board, "motion of objection to defendant's [proposed] order of dismissal" and motion for default judgment.[9]

In his motion, appellant claimed both the CMF's mailroom and litigation office and the trial court clerk had engaged in "an obstruction of justice . . . since the very start of this claim" that had deprived him of his right to meaningful access to the courts. In addition, appellant stated: "The plaintiff states as 'fact' under oath the [papers he submitted in opposition to summary judgment] with all attachments and exhibits had been mailed legal mail on Jan/31/07, and that the plaintiff just received it back last night (Feb/20/07) from the clerk of the court stamped (Feb/9/07) after the fact of the case

---

[9] Appellant's cover letter attached to these papers, dated March 21, 2007, stated that this was the third time since January 31, 2007, that he had placed the papers in the prison mail for delivery to the trial court.

management and status conference and hearing on defendants' summary judgment motions against the plaintiff!"

The trial court scheduled a hearing on appellant's motion to vacate or for reconsideration of the summary judgment ruling for May 2, 2007. On April 19, 2007, appellant filed a motion seeking a court order to permit him to appear telephonically for the hearing via a court call.

Also on April 19, counsel for Dr. Hawley filed a memorandum of points and authorities in opposition to appellant's motion to vacate or for reconsideration, in which he argued that no legal basis existed for vacating the order dismissing Dr. Hawley from the lawsuit because he was never properly served. Counsel further argued that appellant's motion was untimely, because final judgment in favor of all defendants had been entered before appellant's motion was filed.

On April 30, 2007, respondent filed a memorandum of points and authorities in opposition to appellant's motion, as well as a request to strike the motion, on the ground, among others, that the trial court lacked authority to hear it because appellant served notice of appeal on March 7, 2007.

The trial court's minutes from the May 2, 2007, hearing on appellant's motion state: "No appearance via court call by plaintiff, John Apollo. Attorney Julianne Mossler [for respondent] appears late, after the hearing. As to the motion for reconsideration of defendant's motion for summary judgment, the court denies the motion. Attorney Mossler appears after the hearing and states that she will submit an order to the court."

On May 17, 2007, appellant's 12-page "affidavit" replying to Dr. Hawley's opposition to his motion to vacate or for reconsideration was filed in the trial court. His affidavit, which was dated April 25, 2007, argued that the dismissal was entered as a result of his mistake, inadvertence, surprise or excusable neglect, and thus should be vacated. The affidavit also provided a detailed account—supported by over 30 exhibits attached to the affidavit—of his numerous attempts since March 9, 2004, when he originally tried to file his complaint, to serve defendants both personally and by mail, and of the numerous problems he had experienced in both submitting and receiving legal documents in a timely manner in this lawsuit due to his status as an indigent prisoner proceeding in propria persona.

Also on May 17, 2007, a letter from appellant signed May 2, 2007, was filed in the trial court regarding his April 19 motion for an order for permission to appear telephonically for the May 2 hearing. The letter stated as follows:

"Comes now, the plaintiff, John V. Apollo, in the above entitled case, with this notice to the court that the plaintiff did not receive the requested motion of an order from the court for a court call directed to the litigation officer, B.C. Williams, that the plaintiff sent to this Honorable Court, on (April/11/07)!

"The plaintiff did received [*sic*] the above request back from the court stamp-filed: (April/19/07)! The plaintiff now states for this Honorable Court record that he arrived exactly at the law library at 8:30 a.m. with all his paper work for the court call! (B.C. Williams) the litigation officer for this medical facility is a 'No Show,' it is now going on 11:30 a.m. and I'm still in the law library writing this now, to this Honorable Court, to inform you that there is NO way that I can be present for a court appointed hearing without a court order, as I am a state prisoner. . . ."

On May 21, 2007, the trial court entered the order proposed by respondent denying appellant's motion to vacate or for reconsideration of its summary judgment ruling.

On May 22, 2007, appellant filed with the court a "notice of a proposed order after hearing," dated May 16, 2007, with attached exhibits. In that letter, appellant advised the court that he received on May 10, 2007, a letter from defendant's attorney attaching a proposed order on appellant's motion to vacate or for reconsideration of the summary judgment order, which requested a reply no later than May 9, 2007. Appellant then stated that he "would not approve of the proposed order even if it was on time, as there was no hearing on (May/2/07) at any time of the day, and if there was, the plaintiff, John V. Apollo (a state prisoner) has no knowledge that it did take place!"

On May 30, 2007, appellant filed a reply to respondent's memorandum of points and authorities in opposition to and request to strike his motion to vacate or for reconsideration. In his reply, appellant argued that the trial court retained the power to hear his motion because his notice of appeal, served on respondent on May 7, 2007, had not been accepted for filing by the trial court clerk. Appellant further argued that his motion was based on the fact that the trial court's ruling on summary judgment was not supported by either the facts or the correct rule of law. In particular, appellant noted that, as set forth in his motion, he initially mailed his complaint in a timely manner, but that its filing was delayed due to circumstances beyond his control, "being a state prisoner and both indigent and without (legal) representation or counsel, as compared to the defendant's professional and expert (legal) counsel."

On July 9, 2007, appellant's notice of appeal was filed.

DISCUSSION

Appellant, continuing to proceed in propria persona, contends the trial court erred in granting summary judgment in favor of respondent, and in dismissing the other defendants, Nurse Mann and Dr. Hawley, for lack of proper service. As an initial matter, appellant contends that, in prosecuting this action, he was denied his right of meaningful access to the courts based on his status as an indigent, unrepresented prisoner litigant. Appellant reasons that, among other things, he could not appear for hearings without a court order, which the trial court did not grant, and he repeatedly mailed his legal documents well in advance of court deadlines, but due to circumstances beyond his control they were not filed in a timely manner. Appellant further contends the trial court erred in granting respondent's summary judgment motion because (1) his claim was timely, (2) respondent had a duty to comply with his physicians' orders to provide him a special diet, (3) and respondent cannot be held immune from liability based on her failure to comply with such duty.

■ We proceed first to what we deem the crucial issue in this case—whether appellant was deprived of a right of meaningful access to the courts. Appellant, in his opening brief, directs us to the proper authority—*Wantuch v. Davis* (1995) 32 Cal.App.4th 786 [39 Cal.Rptr.2d 47] (*Wantuch*).[10] In that case, our colleagues in the Second District held in no uncertain terms that "A prisoner may not be deprived, by his or her inmate status, of meaningful access to the civil courts if the prisoner is both indigent and a party to a bona fide civil action threatening his or her personal or property interests." (*Id.* at p. 792.)

In reaching that conclusion, the *Wantuch* court first noted that California courts have frequently recognized that indigent prisoners who are *defendants* in bona fide civil actions threatening their personal or property interests have a federal and state constitutional right, as a matter of due process and equal protection, of meaningful access to the courts. (*Wantuch, supra,* 32 Cal.App.4th at p. 792, citing *Yarbrough v. Superior Court* (1985) 39 Cal.3d 197, 200–201 [216 Cal.Rptr. 425, 702 P.2d 583] (*Yarbrough*); *Payne v. Superior Court* (1976) 17 Cal.3d 908, 923 [132 Cal.Rptr. 405, 553 P.2d 565] (*Payne*).) California courts, at that time, however, had not recognized such a constitutional right in civil actions, like this one, involving prisoners who are plaintiffs. (*Wantuch, supra,* 32 Cal.App.4th at pp. 792–793.) Nonetheless, the *Wantuch* court noted, indigent prisoners who are plaintiffs in bona fide civil actions still have a protected interest in meaningful court access. Under Penal Code section 2601, former subdivision (e) (now designated subd. (d) per a

---

[10] Appellant also cited *Wantuch* several times below in his various legal submissions, but it is not clear the trial court ever considered its application to this case.

1996 amendment), a prisoner has an express statutory right to initiate civil actions.[11] Thus, to give meaning to this statutory right, the *Wantuch* court interpreted it to include within its scope the right to be afforded meaningful access to the courts to prosecute those civil actions. (*Wantuch, supra,* 32 Cal.App.4th at p. 792.) Following this reasoning, the *Wantuch* court thus concluded that a prisoner may not be deprived, by his or her inmate status, of meaningful access to the civil courts if the prisoner is both indigent and a party to a bona fide civil action threatening his or her personal or property interests. (*Ibid.*)

■ In so holding, the *Wantuch* court recognized that, while "[m]eaningful access to the courts is the 'keystone' of an indigent prisoner's right to . . . prosecute bona fide civil actions," such right " 'does not necessarily mandate a particular remedy' to secure access." (*Wantuch, supra,* 32 Cal.App.4th at p. 792, citing Pen. Code, § 2601, former subd. (e); see also *Yarbrough, supra* 39 Cal.3d at pp. 200–201; *Payne, supra,* 17 Cal.3d at p. 923.) For example, a prisoner may not compel the trial court to appoint counsel on his or her behalf. (*Wantuch, supra,* 32 Cal.App.4th at p. 793.) Nor may a prisoner ordinarily compel his or her appearance in court. (*Id.* at p. 794.) Nonetheless, several alternatives to those remedies are available to the trial courts in order to ensure indigent prisoner litigants are afforded meaningful access to the courts, including: "(1) deferral of the action until the prisoner is released ([*Payne*], *supra,* 17 Cal.3d at p. 925); (2) appointment of counsel for the prisoner (*id.* at p. 924; [*Yarbrough,*] *supra,* 39 Cal.3d at pp. 200–201); (3) transfer of the prisoner to court (Pen. Code, §§ 1567, 2620); (4) utilization of depositions in lieu of personal appearances (Code Civ. Proc., § 1997; Pen. Code, §§ 2622–2623; *In re Bagwell* (1938) 26 Cal.App.2d 418, 420 [79 P.2d 395]); (5) holding of trial in prison ([*Payne*], *supra,* 17 Cal.3d at p. 925); (6) conduct of status and settlement conferences, hearings on motions and other pretrial proceedings by telephone (cf. *In re Grimes* (1989) 208 Cal.App.3d 1175, 1182–1183 [256 Cal.Rptr. 690]); (7) propounding of written discovery; (8) use of closed circuit television or other modern electronic media; and (9) implementation of other innovative, imaginative procedures (Code Civ. Proc., § 128, subd. . . . (a)(5); cf. *Hernandez* v. *Whiting* (9th Cir. 1989) 881 F.2d 768, 770–771; *Poole* v. *Lambert* (11th Cir. 1987) 819 F.2d 1025, 1028)." (*Wantuch,* at pp. 792–793, fns. omitted.)

■ Generally, a trial court has discretion to choose among these and other remedies in safeguarding a prisoner litigant's right of meaningful access

---

[11] Penal Code section 2601, subdivision (d), provides: "Subject only to the provisions of that section, each person described in Section 2600 [deprivation of rights to prisoners] shall have the following civil rights: [¶] . . . [¶] (d) To initiate civil actions, subject to a three dollar ($3) filing fee to be collected by the Department of Corrections, in addition to any other filing fee authorized by law, and subject to Title 3a (commencing with Section 391) of the Code of Civil Procedure."

to the courts to prosecute or defend against a civil action threatening his or her interests. (*Yarbrough, supra,* 39 Cal.3d at pp. 200–201; *Wantuch, supra,* 32 Cal.App.4th at pp. 793–794.) However, a trial court does not have discretion to choose *no remedy* in cases where the prisoner's civil action is bona fide and his or her access to the courts is being impeded. Indeed, the California Supreme Court has suggested that, in certain cases, appointment of counsel may be the *only remedy* available to protect a prisoner litigant's right of meaningful court access: "In an appropriate case, and as a last alternative, appointment of counsel may be the only way to provide an incarcerated, indigent civil defendant with access to the courts for the protection of threatened personal and property rights."[12] (*Yarbrough, supra,* 39 Cal.3d at pp. 200–201.)

Applying these principles to this case, we thus must determine whether, considering appellant's status as an unrepresented prisoner-litigant, the trial court exercised its discretion in a manner protective of his statutory right to meaningful access to the courts to prosecute bona fide civil claims.

Having reviewed the record in its entirety, it appears appellant has vigorously pursued his claim—at the administrative, trial and appellate levels—to the best of his ability. Appellant advised the trial court early on in these proceedings that, as a prisoner, he was permitted to perform legal work, including making copies, at most one day per week for two hours (or four hours if required to meet a court deadline), and only if the law library remained open.[13] Despite these limitations, appellant made consistent and reasonable, albeit often unsuccessful, efforts to effectuate service, to file timely motions and other legal documents, and to appear at hearings. Further, when the trial court clerk repeatedly declined to file appellant's legal documents for failure to comply with applicable court rules and procedures (despite his good faith efforts to comply), appellant resubmitted them, often more than once, until they were properly filed. When hearings were scheduled, appellant not only provided notice to opposing counsel when required to do so, he repeatedly requested court orders to permit him to appear telephonically from prison. Unfortunately, it is not clear from the record that the trial

---

[12] In so holding, the *Yarbrough* court made clear that the trial court's focus when exercising its discretion must be on the right to meaningful court access rather than on the right to appointed counsel. (*Yarbrough, supra,* 39 Cal.3d at p. 201.) Moreover, the discretion to appoint counsel is distinct from the discretion to order compensation for appointed counsel. (*Ibid.*; see also *Wantuch, supra,* 32 Cal.App.4th at p. 794, fn. 6 ["Courts do not have the power to require the expenditure of public funds to compensate appointed counsel for indigent prisoners in civil actions."].)

[13] As set forth above, appellant could not perform legal work if the law library was closed for administrative or security reasons, such as the absence of the library staff or a prison lockdown.

court considered each of his requests and, perhaps not surprisingly, appellant was more often than not absent from those hearings.

In addition, appellant repeatedly requested in his case management statements and other legal documents that the trial court consider his "dire need for the appointment of counsel" to represent him. Appellant also advised the trial court that he anticipated bringing a motion for appointment of counsel "as the plaintiff is an indigent prisoner who is in dire need of (legal) assistance to fight-win this case." However, in the midst of his repeated attempts to effectuate service and to oppose summary judgment and dismissal, appellant failed to bring such a motion.

Under these circumstances, we conclude the trial court abused its discretion in granting respondent's summary judgment motion and entering judgment in favor of all defendants without first ensuring that appellant's right to meaningful court access to prosecute bona fide civil claims was being protected. *Yarbrough* and *Wantuch* are instructive. In *Yarbrough*, where an indigent prisoner was a defendant in a civil action threatening his or her personal or property interests, the California Supreme Court sought "to impress on the trial courts the need to exercise their discretion in as informed a manner as possible. At a minimum, then, the court is required to conduct the inquiry . . . to consider the defendant's indigency, the feasibility of a continuance, whether defendant's interests are actually at stake, and whether counsel would be helpful under the circumstances of the case." (*Yarbrough, supra*, 39 Cal.3d at p. 207.) In *Wantuch*, the Court of Appeal held that the same inquiry is required in civil actions in which the indigent prisoner is a plaintiff faced with a threat to his or her personal or property interests. (*Wantuch, supra*, 32 Cal.App.4th at p. 796.) Here, despite appellant's well-documented efforts and frustrations in prosecuting this action, the record reflects little, if any, consideration by the trial court of his statutory right of meaningful access to the courts. As such, we conclude this matter must be returned to the trial court for further proceedings to permit the trial court to engage in such inquiry in accordance with the principles set forth above. (See *Yarbrough, supra*, 39 Cal.3d at pp. 207–208; *Wantuch, supra*, 32 Cal.App.4th at pp. 794–796.)

Specifically, on remand, the trial court must first determine whether appellant is indigent. (*Wantuch, supra*, 32 Cal.App.4th at p. 796.) While we leave this determination to the trial court's sound discretion, we note that, based on the record, appellant has filed many requests, both in this court and below, for waiver of court fees and costs, all of which have been granted.

Next, the trial court must determine whether this lawsuit involves a bona fide threat to appellant's personal or property interests. (*Wantuch, supra*, 32

Cal.App.4th at p. 796.) Again leaving this determination to the trial court's discretion, we note that appellant was diagnosed with a serious medical condition of the colon, which led to his transfer from Folsom State Prison to CMF on a "medical override" for purposes of treatment. Two physicians at CMF ordered that appellant's medical treatment should include a special diet. Nonetheless, it appears defendants in this case declined to comply with the orders of appellant's physicians, resulting in alleged harm to appellant's health and well-being.

While the Board rejected appellant's claim based on these alleged facts, it nonetheless stated that his "claim raises complex issues of fact and law that should be resolved through formal legal action. . . . The Board's rejection of your claim will allow you to initiate litigation should you wish to pursue this matter further." It is for the trial court on remand to determine whether the Board's conclusion is accurate.[14]

---

[14] We take no position on the merits of appellant's lawsuit. We do, however, briefly address one issue raised below—whether appellant's complaint was timely filed—given that resolution of this threshold issue determines whether appellant is entitled to court access in the first place. Under the Government Claims Act, section 810 et seq. (the Act), which governs actions against public entities and public employees, litigants must meet certain prescribed time limitations to avoid dismissal of their lawsuit. Specifically, under the Act, no person may sue a public entity or public employee for damages unless such person has presented a timely written claim to the public entity, which the public entity has then rejected. (§ 945.4; *Curtis T. v. County of Los Angeles* (2004) 123 Cal.App.4th 1405, 1415 [21 Cal.Rptr.3d 208].) With certain exceptions, the person must then initiate a lawsuit against the public entity or public employee not later than six months after the date notice of the claim's rejection was personally delivered to the person or deposited in the mail. (§ 945.6, subd. (a); *County of Los Angeles v. Superior Court* (2005) 127 Cal.App.4th 1263, 1267–1268 [26 Cal.Rptr.3d 445].) Failure to comply with this six-month time limitation mandates dismissal of the lawsuit. (*County of Los Angeles v. Superior Court, supra*, at pp. 1270–1271.)

Here, the Board mailed a letter to appellant, advising that his claim was being rejected, on September 12, 2003. Appellant, however, did not file the operative complaints in this case until October 19, 2004, well outside the Act's six-month limitations period. As such, it would appear his case is time-barred. However, appellant argues on appeal, as he did below, that his case should nonetheless be permitted to proceed because he *initially* filed a complaint, based on the same set of facts, on March 9, 2004, within the Act's six-month limitations period. Evidence supports his claim. Without reviewing all such evidence here, we note that one of appellant's case management statements stated that his complaint was originally submitted in March 2004. Further, appellant's file-stamped June 14, 2004, letter to the trial court (see fn. 3, *ante*) noted that he had attempted to file a complaint on March 9, 2004, but that it was returned by the clerk because he failed to use the proper forms. In addition, appellant's letter inquired into the status of his second submission of a complaint, which was mailed on April 4, 2004.

This evidence, we conclude, is at least sufficient to raise legal and factual issues regarding the timeliness of appellant's complaint, which the trial court must consider on remand. (See *Childs v. State of California* (1983) 144 Cal.App.3d 155, 162–163 [192 Cal.Rptr. 526] [in considering the timeliness of a complaint, the court held that the date of the state's mailing of a notice rejecting appellant's claim was a question of fact not subject to resolution by demurrer, and that official acts of state relevant to such notice may be judicially noticed for purposes of ruling upon the demurrer]; see also *Moore v. Twomey* (2004) 120 Cal.App.4th 910,

Finally, if on remand the trial court determines that appellant is indigent and has a bona fide claim, the trial court must then consider what remedies are available to protect appellant's right of meaningful access to the courts. As set forth above, several alternative remedies are available, and we leave it to the trial court's sound discretion to determine which remedy or remedies are appropriate under these particular circumstances. (*Wantuch, supra,* 32 Cal.App.4th at p. 796 [ordering the trial court on remand to "exercise its discretion to determine the appropriate remedy or remedies to effectuate [the prisoner's] constitutional and statutory rights of meaningful access to the courts to prosecute his complaint and defend against the cross-complaint"].)

■ In reaching this conclusion, we acknowledge that in propria persona litigants, like appellant, are entitled to the same, but no greater, rights than represented litigants. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247 [19 Cal.Rptr.3d 416].) We further acknowledge that trial courts have a duty in the name of public policy to expeditiously process civil cases. Adherence to these important principles, however, must yield to the even greater principles of providing in propria persona litigants with meaningful access to the courts and of deciding bona fide civil actions on their merits. (See *Wantuch,* 32 Cal.App.4th at p. 795, and cases cited therein [noting that "[p]reventing parties from presenting their cases on the merits is a drastic measure . . . ," which generally should be avoided].)

■ As our colleagues noted in *Hoversten v. Superior Court* (1999) 74 Cal.App.4th 636, 640 [88 Cal.Rptr.2d 197]: "Prison walls are a powerful restraint on a litigant wishing to appear in a civil proceeding." Given this, all courts have an obligation to ensure those walls do not stand in the way of affording litigants with bona fide claims the opportunity to be heard.

---

914, 918 [16 Cal.Rptr.3d 163] [holding that, under the "prison-delivery" rule, "a civil complaint by a pro se prisoner litigant should be deemed filed when it is delivered to prison authorities for forwarding to the superior court"]; *United Farm Workers of America v. Agricultural Labor Relations Bd.* (1985) 37 Cal.3d 912, 918 [210 Cal.Rptr. 453, 694 P.2d 138] [holding that a petition with a technical defect may not be dismissed for untimeliness under Labor Code section 1160.8 when it is delivered to the appropriate clerk's office during office hours within the applicable time limits]; *Carlson v. Department of Fish & Game* (1998) 68 Cal.App.4th 1268, 1282 [80 Cal.Rptr.2d 601] [holding that plaintiff's complaint should have been deemed filed when it was presented to the clerk for filing, and thus that it was error to grant defendant's demurrer on statute of limitations grounds where more than six months elapsed between the date plaintiff's claim was rejected and the date the complaint was actually filed]; but see *Duran v. St. Luke's Hospital* (2003) 114 Cal.App.4th 457, 461–462 [8 Cal.Rptr.3d 1].)

## DISPOSITION

The judgment is reversed. This matter is remanded to the trial court for further proceedings consistent with this opinion and, in particular, with appellant's statutory right of meaningful access to the courts to prosecute bona fide claims.

Pollak, Acting P. J., and Siggins, J., concurred.