Filed 4/10/25  Sanchez v. Acedo CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JAELA SANCHEZ, Respondent, v. DANIEL ACEDO, Appellant. | D083669 (Super. Ct. No. 23FDV04966S) |


APPEAL from a judgment of the Superior Court of San Diego County, James T. Atkins, Commissioner.  Reversed and remanded.

Daniel Acedo, in pro. per., for Appellant.

No appearance for Respondent.

MEMORANDUM OPINION

Daniel Acedo appeals from the trial court's order granting a three-year domestic violence restraining order (DVRO) against him.  Acedo's ex-fiancée sought a DVRO against him while he was incarcerated in the San Diego County Jail.  She obtained a temporary restraining order (TRO) and served it on him along with notice that a hearing had been set on her request for a permanent order.  Acedo asked the trial court to order the San Diego County

Sheriff's Department to transport him to the hearing. The trial court *did not address his request* before conducting the hearing without him. We reverse and remand to the trial court for proceedings consistent with Acedo's right to meaningful access to the courts. (*Payne v. Superior Court* (1976) 17 Cal.3d 908, 922–923 (*Payne*).)

## I.

### *Background*

On October 23, 2023, Jaela Sanchez filed a request for a no-contact DVRO against Acedo, her former fiancé. In a supporting declaration, Sanchez averred Acedo had been in jail for over a year for physically abusing her. He had broken her nose, given her "black eyes," and punched her in the head. Then, from jail, he continued to "harass" her and make her "feel unsafe," calling her "about 50 times."

Sanchez averred that, on October 11, Acedo wrote a letter to her "low income housing unit apartments falsely accusing [her] of welfare fraud." She knew it was Acedo who wrote the letter because his name was on the letter and she recognized his writing. Additionally, on October 19, "CPS" came to her home because someone reported she was "aware of [her] brother sexually abusing [her] 11[-]year[-]old son," which she stated was a "complete lie." She believed Acedo was behind the call and was "harass[ing]" her because he knew her "children mean everything" to her.

Finally, Sanchez averred Acedo was calling her "excessively every[ ] day." She tried to ignore his calls and asked him to "leave [her] alone" but he "continue[d] to threaten" her by telling her "if he is not happy that neither will" she be. According to Sanchez, Acedo's "biggest threat to scare" her was telling her he would "hurt [her] by doing things to break [her] family apart." Acedo also told her he would be released soon and "given his prior history of

2

violent abuse towards [her]," she "fear[ed] that he [would] come back to harm" her. He told her, too, that "he has people" who can harm her.

Sanchez averred she was "constantly on edge" and did not know if Acedo had "people following or tracking [her] every move." All this caused her "extreme anxiety" and she was "afraid" for her safety.

Based on these allegations, Sanchez requested a no-contact order and a stay-away order prohibiting Acedo from coming within 100 yards of her person, home, and workplace. On October 24, the trial court issued a TRO granting her request pending an evidentiary hearing.

Sanchez served Acedo with the TRO on an unknown date.[1] On November 1, Acedo filed a response opposing the DVRO request. In support of the response, he filed a handwritten "addendum" containing points and authorities.

At the beginning of the addendum—the very first point—Acedo asked the trial court to "order the San Diego County Sheriffs to produce [him] for [the] hearing." The request specifically cited to *Apollo v. Gyaami* (2008) 167 Cal.App.4th 1468 (*Apollo*), an opinion that discusses in detail the right of indigent inmates to meaningful access to the courts.

Acedo further asserted Sanchez "failed to state a claim upon which relief can be granted," citing Code of Civil Procedure sections 431.30, subdivision (b)(1) to (b)(2) and 430.10, subdivision (e). He asserted "a superior court" had specifically allowed Acedo to have "US Mail and electronic contact at the request of [Sanchez]." And finally, he disputed Sanchez's factual allegations in detail, for example, claiming Sanchez made

---

1    The superior court's register of actions shows Sanchez filed a proof of service on November 2, 2023.

3

her claims up in retaliation for his report of welfare fraud, she admitted to him on October 24 that "she lied and added more false allegations" to obtain the TRO, and the "CPS inquiry" about Sanchez's children lacked "any nexus to [the] case."

On November 9, 2023, the trial court held an evidentiary hearing to determine whether to make the TRO permanent. A court reporter was not requested and the hearing was not reported.[2] The court's minutes state Sanchez appeared without counsel, while Acedo was not present. According to the minutes, Sanchez's declaration was admitted into evidence, and "[b]y a preponderance of the evidence, the court grant[ed] the . . . request and issue[d] a [DVRO] for a period of 3 years." The trial court did not conduct a hearing or issue a ruling addressing Sanchez's request to be transported to the hearing.

On November 21, 2023, Acedo filed a timely notice of appeal. The notice of appeal and notice designating the record on appeal represent they were filed from jail.[3] On August 5, 2024, we approved Acedo's application to waive court fees and costs on the ground he did not have enough income to pay for his household's basic needs and the court fees.

---

[2]     Our record review does not reveal a minute order showing the court conducted a custody check for Acedo at the time of the hearing.

[3]     We take judicial notice on our own motion that the address of the San Diego County Central Jail (SDCCJ) is 1173 Front Street, San Diego, CA 92101. (Evid. Code, §§ 452, subd. (h), 459.)

4

II.

*Discussion*

Acedo raises a number of contentions in his opening brief.[4]  We begin with what we consider to be the key and dispositive issue in this appeal: whether Acedo was improperly denied his right to meaningful access to the courts.  Our review is for abuse of discretion.  (*Payne, supra,* 17 Cal.3d at p. 926.)

Indigent inmates who are defendants in bona fide civil actions that threaten their interests have a right to meaningful access to the courts "to be heard in [their] defense."  (*Yarbrough v. Superior Court* (1985) 39 Cal.3d 197, 200 (*Yarbrough*).)  The deprivation of that right is a violation of both the due process and equal protection clauses of both the state and federal constitutions.  (*Payne, supra,* 17 Cal.3d at pp. 922–923.)

Courts have wide discretion and a wide variety of measures at their disposal to ensure an indigent inmate is provided meaningful access to the courts.  (*Apollo, supra,* 167 Cal.App.4th at p. 1483.)  "Those measures include[ ] (1) deferral of the action until the prisoner is released; (2) appointment of counsel for the prisoner; (3) transfer of the prisoner to court to attend hearings or the trial; (4) utilization of depositions in lieu of personal appearances; (5) holding of trial in prison; (6) conducting status and settlement conferences, hearings on motions and other pretrial proceedings by telephone; (7) propounding of written discovery; and (8) use of closed circuit television or other modern electronic media."  (*Smith v. Ogbuehi*

---

[4]    Sanchez did not file a respondent's brief in this appeal.  We therefore decide the case based on the record on appeal and Acedo's opening brief. (Cal. Rules of Court, rule 8.220(a).)

5

(2019) 38 Cal.App.5th 453, 467, italics omitted (*Smith*).) The Penal Code specifically authorizes the measure requested by Acedo: transportation to court to attend a hearing. (Pen. Code, § 1567.)

Here, it is undisputed Acedo was in jail when Sanchez filed her TRO request. In his first filing with the trial court, Acedo represented he was still in jail and asked to be transported to court for the evidentiary hearing on whether the TRO should be made permanent. Upon receipt of this request, the trial court was required to (1) determine whether he was indigent, (2) determine whether Sanchez's application for a DVRO was a bona fide threat to his personal or property interests, and (3) if the first two conditions were satisfied, consider what measures were available to protect Acedo's right of meaningful access to the courts. (*Smith, supra,* 38 Cal.App.5th at pp. 466–467.) The trial court abused its discretion when it failed to consider and rule on Acedo's request before holding the evidentiary hearing without him. (*Yarbrough, supra,* 39 Cal.3d at p. 207.) "A court is not under a duty to exercise its discretion in a particular manner . . . , but may be compelled to exercise its discretion in the first instance." (*Payne, supra,* 17 Cal.3d at p. 925, citation omitted.)

The remedy for the trial court's error is a new hearing that comports with the principles of due process and equal protection. (Cf. *In re Marriage of D.S. and A.S* (2023) 87 Cal.App.5th 926, 936–937 (*Marriage of D.S. and A.S.*).) On remand, the trial court must determine whether Acedo is presently indigent and whether he is still incarcerated or otherwise subject to restrictions on his liberty that necessitate assistance with meaningful access

to the courts.[5]  (See *Apollo, supra,* 167 Cal.App.4th at pp. 1485–1486.)  If so, the court shall exercise its discretion to select or fashion an appropriate means of affording him meaningful access.  "[A] trial court does not have discretion to choose *no remedy* in cases where [a] . . . civil action is bona fide and [an inmate's] access to the courts is being impeded."  (*Id.* at p. 1482.)  If not, Acedo will have the opportunity to hire an attorney or appear on his own behalf at any further proceedings.

To place the parties as close as possible to the status quo ante, we do not immediately dissolve the current protective order.  Sanchez successfully obtained a TRO and was entitled to its protection pending the hearing on whether it should be made permanent.  We therefore leave the protective order in force until at least 30 days after issuance of this court's remittitur.  (See *Marriage of D.S. and A.S., supra,* 87 Cal.App.5th at pp. 937–938; Fam. Code, §§ 242, 245, subds. (b) and (c) [if the court grants a continuance, upon request by either party and a showing of good cause, "any temporary restraining order that has been issued shall remain in effect until the end of the continued hearing, unless otherwise ordered by the court"].)  During that time, assuming Sanchez still seeks a permanent protective order, we expect the trial court to conduct a new hearing on whether it should be made permanent.  However, "in no instance shall the court approve an extension beyond the date the order under review would expire."  (*Ross v. Figueroa* (2006) 139 Cal.App.4th 856, 868–869.)

---

[5]  We leave these determinations to the court's sound discretion. However, we note that Acedo successfully applied in this court for a waiver of court fees and costs.  On the other hand, his most recent filings in our court indicate he is no longer filing from SDCCJ.

7

In fashioning this remedy, we considered and rejected Acedo's contention the TRO was invalid. As noted, he contends he was denied procedural due process because he did not receive notice and an opportunity to be heard before it issued. He is incorrect. A TRO may be issued to restrain any person to prevent acts of domestic violence and abuse "based solely on the affidavit or testimony of the person requesting the restraining order" if the affidavit or testimony "shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse." (Fam. Code, § 6300, subd. (a).) A court is authorized to issue a TRO *without notice*, pending an evidentiary hearing within 21 days or 25 days if there is good cause. (§§ 6300, subd. (a), 242, subd. (a).) Indeed, the court "shall not" deny the TRO "solely because the other party was not provided with notice." (§ 6300, subd. (b).) The no notice requirement recognizes that notifying a proposed restrained person about an applicant's request for a restraining order can trigger a significant risk of harm to the applicant.

Finally, we do not address Acedo's other claims of error. They are premature. Our remand order allows both parties the opportunity to present further evidence in support of their respective claims and defenses.

## DISPOSITION

The judgment is reversed and the cause remanded to the trial court for further proceedings in accordance with this opinion. The TRO issued on October 24, 2023 is reinstated and shall remain in force until at least 30 days after issuance of this court's remittitur. Neither party shall recover costs. (Cal. Rules of Court, rule 8.278(a)(5).)

DO, J.

WE CONCUR:

O'ROURKE, Acting P. J.

RUBIN, J.

9