Filed 2/25/26

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| J.S., | D086356 |
| Plaintiff and Respondent, | (Super. Ct. No. 25FDV00839C) |
| v. | |
| D.A., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Brigid Campo, Judge.  Reversed and remanded.

D.A., in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

INTRODUCTION

This is the second time we reverse a domestic violence restraining order (DVRO) issued for J.S.'s protection.  In a prior appeal, we reversed a three-year DVRO that J.S. obtained against her former fiancé, D.A. (appellant), because the trial court failed to address appellant's request to be transported from the San Diego County Jail to court for the evidentiary

hearing before proceeding without him.  ([*J.S. v. D.A.*] (Apr. 10, 2025, D083669) [nonpub. opn.].)

In this appeal, J.S. petitioned for another DVRO against appellant because the abuse had not stopped.  Appellant, now an inmate at a correctional facility, requested that the trial court order the California Department of Corrections and Rehabilitation (CDCR) to prepare him to appear telephonically at the evidentiary hearing.  As before, but with a different bench officer, the court failed to address his request and issued a five-year DVRO at a hearing without him.  We must again reverse and remand to the court for proceedings consistent with appellant's right to meaningful access to the courts.

Indigent inmates in bona fide civil actions that threaten their interests have a right to meaningful access to the courts to be heard in their defense.  The deprivation of that right is a violation of both the due process and equal protection clauses of both the state and federal constitutions.  And because the remedy for the denial of that fundamental right is a new hearing, it is critically important for *both* the petitioner and respondent in DVRO proceedings that courts promptly identify and address these requests by indigent inmates for access.  Duplicative proceedings necessitated by such preventable errors are burdensome for victims of domestic violence and may discourage them from pursuing protective relief.

BACKGROUND

On February 26, 2025, J.S. filed a request for a DVRO against appellant.  In a supporting statement, J.S. explained appellant has been abusive towards her since they started their relationship in 2021.  He broke her nose in 2022 and gave her "many black eyes over the years."  She filed for

a restraining order in 2022, but she believed appellant when he promised "to be better" only for him to become abusive again.

J.S. stated appellant was "very controlling" of her. She could not go to her mother's house, and he caused her to lose her job when he "beat up" her manager. Appellant was "always very suspicious" and believed she was having affairs with others.

J.S. stated, appellant "is currently in prison for the prior domestic violence against [her]." Over the weekend of February 22 and 23, 2025, appellant repeatedly contacted her from prison. She asked him to stop contacting her, telling him she was "done" with him and "to please move on with his life." But he kept contacting her and told her, "that is why guys rape you," "I hope you get raped again," and "I'm not done with you." (Boldface omitted.) When she asked him to leave her alone, appellant started "cussing" at her in Spanish.

J.S. blocked appellant's phone number, but he called from a different number. She picked up the call because she did not recognize the number and it was him, telling her, "If I cannot be with you, then you cannot be with anyone else." (Boldface omitted.) He told her that when he gets out of prison, he will look for her and her new partner.

J.S. is fearful appellant will harm her when he is released. She explained, "He has told me that he only has three years left and that I should look out. I am afraid for my life and scared of what he can do. I am worried that he will attack me or try to do something else." (Boldface omitted.)

On February 26, 2025, the trial court issued a temporary restraining order (TRO) requiring appellant to stay away from J.S. and to not abuse or contact her. The court set an evidentiary hearing on March 17, 2025 to determine whether to issue a permanent order. Notably, the TRO specified

3

appellant's current address as the Richard J. Donovan Correctional Facility (Donovan Correctional Facility) at 480 Alta Road, San Diego, California 92179.

On March 12, 2025, appellant filed a response to the DVRO request using a DV-120 form. Appellant stated in his response that he could receive court papers at 480 Alta Road, San Diego, California 92179, confirming he was at the Donovan Correctional Facility.[1]

Appellant disagreed with the requested order, claiming he was denied due process because he did not receive "advance notice" or "due process" for the issuance of the TRO on February 26, 2025. He stated he needed an "extension else [he] cannot meet [the] petitioner's unexpected allegations and will not be afforded a fair hearing." As additional reasons he disagreed with the requested order, appellant directed the court to review his "attached notice and motion to continue and to conduct discovery with leave of court and for good cause." The attached document was six pages long and handwritten. On page 3, appellant stated: "I seek to have the litigations coordinator at CDCR prepare for me to appear by telephone by order of this court."

At the hearing on March 17, 2025, J.S. appeared as a self-represented litigant. Appellant was not present. According to the trial court's minutes, J.S. had not received appellant's response, so the court provided her with a copy. The court also noted "there is a request to continue in the response" by appellant and thus the court found good cause to continue the hearing to

---

[1] We take judicial notice on our own motion that the address of the Donovan Correctional Facility is 480 Alta Road, San Diego, California 92179. (Evid. Code, §§ 452, subd. (h), 459.)

April 7, 2025.  The minutes do not reflect that the court considered appellant's other requests, including his request for an order to appear by telephone.

On April 7, 2025, the trial court held an evidentiary hearing.  The hearing was not reported.  According to the minutes, appellant, again, was not present.  The minutes do not show the court conducted a custody check for appellant at the time of the hearing.  J.S. appeared without counsel and testified.  Based on her testimony and the declarations and pleadings on file, the court found J.S. met her burden of proof to show appellant had engaged in abuse, as defined by Family Code section 6203.  The court granted J.S. a five-year DVRO against appellant.

The next day, on April 8, 2025, appellant filed three handwritten motions that were dated March 21, 2025.  In them, he requested:  (1) J.S. be compelled to answer requests for interrogatories and admissions; (2) appointment of an expert physician; and (3) assistance facilitating a telephonic appearance.  Our record on appeal does not show the court took any action in response to these filings.

On May 6, 2025, appellant filed a timely notice of appeal, asserting he was deprived of his constitutional right of access to the court because "the court proceeded without [him]."  The notice of appeal and notice designating the record on appeal represent they were filed from the Donovan Correctional Facility.  On July 22, 2025, we approved appellant's application to waive court fees and costs because he did not have enough income to pay for his household's basic needs and the court fees.

DISCUSSION

Appellant raises several contentions in his opening brief.[2] We begin with what we consider to be the key and dispositive issue in this appeal: whether appellant was improperly denied his right to meaningful access to the courts. Our review is for abuse of discretion. (*Payne v. Superior Court* (1976) 17 Cal.3d 908, 926 (*Payne*).)

Indigent inmates who are defendants in bona fide civil actions that threaten their interests have a right to meaningful access to the courts "to be heard in [their] defense." (*Yarbrough v. Superior Court* (1985) 39 Cal.3d 197, 200 (*Yarbrough*).) The deprivation of that right is a violation of both the due process and equal protection clauses of both the California and United States Constitutions. (*Payne, supra,* 17 Cal.3d at pp. 922–923; *Apollo v. Gyaami* (2008) 167 Cal.App.4th 1468, 1485–1487 (*Apollo*).)

Courts have wide discretion and a variety of measures at their disposal to ensure an indigent inmate is provided with meaningful access to the courts. (*Apollo, supra,* 167 Cal.App.4th at p. 1483.) "Those measures include[ ] (1) deferral of the action until the prisoner is released; (2) appointment of counsel for the prisoner; (3) transfer of the prisoner to court to attend hearings or the trial; (4) utilization of depositions in lieu of personal appearances; (5) holding of trial in prison; (6) conducting status and settlement conferences, hearings on motions and other pretrial proceedings by telephone; (7) propounding of written discovery; and (8) use of closed circuit television or other modern electronic media." (*Smith v. Ogbuehi*

---

[2]   J.S. did not file a respondent's brief in this appeal. We therefore decide this case based on the record on appeal and appellant's opening brief. (Cal. Rules of Court, rule 8.220(a).)

(2019) 38 Cal.App.5th 453, 467, italics omitted (*Smith*).)  The Penal Code specifically authorizes transportation of the prisoner to court to attend a hearing.  (Pen. Code, § 1567.)

Here, it is undisputed that appellant was in prison when J.S. filed her DVRO request and this fact was apparent from the trial court's file.  J.S. stated in her supporting statement filed with the DVRO request that appellant was perpetrating the abuse from prison.  The TRO issued by the court specified appellant's current address as the Donovan Correctional Facility.  In his first filing with the court, appellant represented he was still at Donovan where he could receive court papers and asked the court to order CDCR to prepare him to appear telephonically for the evidentiary hearing on whether the TRO should be made permanent.

Upon receipt of this request, and in light of the information in its record, the trial court was required to (1) determine whether appellant was indigent, (2) determine whether J.S.'s application for a DVRO was a bona fide threat to appellant's personal or property interests, and (3) if the first two conditions were satisfied, consider what measures were available to protect appellant's right of meaningful access to the courts.  (*Smith, supra,* 38 Cal.App.5th at pp. 466–467.)  The trial court abused its discretion when it failed to consider and rule on appellant's request before holding the evidentiary hearing without him.  (*Yarbrough, supra,* 39 Cal.3d at p. 207.)  "A court is not under a duty to exercise its discretion in a particular manner . . . , but [it] may be compelled to exercise its discretion in the first instance."  (*Payne, supra,* 17 Cal.3d at p. 925, citation omitted.)

The remedy for the trial court's error is a new hearing that comports with the principles of due process and equal protection.  (Cf. *In re Marriage of D.S. and A.S* (2023) 87 Cal.App.5th 926, 936–937 (*Marriage of D.S. and*

7

*A.S.*).) On remand, the trial court must determine whether appellant is presently indigent and whether he is still incarcerated or otherwise subject to restrictions on his liberty that necessitate assistance with meaningful access to the courts.[3] (See *Apollo, supra,* 167 Cal.App.4th at pp. 1485–1486.) If so, the court shall exercise its discretion to select or fashion an appropriate means of affording him meaningful access. "[A] trial court does not have discretion to choose *no remedy* in cases where [a] . . . civil action is bona fide and [an inmate's] access to the courts is being impeded." (*Id.* at p. 1484.) If not, appellant will have the opportunity to hire an attorney or appear on his own behalf at any further proceedings.

To place the parties as close as possible to the status quo ante, we do not immediately dissolve the current protective order. J.S. successfully obtained a TRO and was entitled to its protection pending the hearing on whether it should be made permanent. We therefore leave the protective order in force until at least 30 days after issuance of this court's remittitur. (See *Marriage of D.S. and A.S., supra,* 87 Cal.App.5th at pp. 937–938; Fam. Code, §§ 242, 245, subds. (b) and (c) [if the court grants a continuance, upon request by either party and a showing of good cause, "any temporary restraining order that has been issued shall remain in effect until the end of the continued hearing, unless otherwise ordered by the court"].) During that time, assuming J.S. still seeks a permanent protective order, we expect the trial court to conduct a new hearing on whether it should be made permanent. Although the court has discretion for good cause shown to

---

[3]     We leave these determinations to the trial court's sound discretion. However, we note that appellant successfully applied in this court for a waiver of court fees and costs.

continue the hearing and extend the TRO (Fam. Code, § 245), "in no instance shall the court approve an extension beyond the date the [permanent DVRO] under review would expire" (*Ross v. Figueroa* (2006) 139 Cal.App.4th 856, 868; see *id.* at pp. 868–869).  Here that would be April 7, 2030.

We do not address appellant's other claims of error because they are premature.  Our remand order allows both parties the opportunity to present further evidence in support of their respective claims and defenses.

## DISPOSITION

The judgment is reversed and the cause is remanded to the trial court for further proceedings in accordance with our opinion.  The TRO issued on February 26, 2025 is reinstated and shall remain in force until at least 30 days after issuance of this court's remittitur.  Neither party shall recover costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)

DO, J.

WE CONCUR:

O'ROURKE, Acting P. J.

RUBIN, J.

9