Filed 6/11/21

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| DARREN HULBERT, | C090663 |
| Plaintiff and Appellant, | (Super. Ct. No. 190446) |
| v. | |
| RICHARD CROSS, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Shasta County, Stephen H. Baker, Judge. Reversed with directions.

Darren Hulbert, in pro. per., for Plaintiff and Appellant.

Leonard & Lyde, D. Marc Lyde and Michael G. Gallert for Defendant and Respondent.

1

Plaintiff Darren Hulbert, a self-represented indigent inmate, appeals from a judgment of dismissal in a medical malpractice action in which he asserts a single cause of action for medical negligence against defendant, Richard Cross, M.D. Dr. Cross performed a radial head resection and arthroplasty on Hulbert's right elbow. Hulbert alleges that Dr. Cross negligently failed to tighten a screw in the implant, which resulted in the screw coming loose and damaging Hulbert's elbow joint, cartilage, and surrounding tissue. To help establish his claim, Hulbert filed a motion for appointment of legal counsel and a medical expert. The trial court denied the motion and subsequently found that Hulbert could not rebut the declaration of Dr. Cross's medical expert without providing medical expert evidence of his own. On this basis, the trial court granted Dr. Cross's motion for summary judgment.

On appeal, Hulbert contends (1) he was deprived of meaningful access to the courts because the trial court denied him the assistance of a medical expert while requiring a medical expert to establish a triable issue of material fact, (2) the trial court failed to exercise its discretion by considering all of the remedies available to ensure that he had meaningful access to the courts, (3) the trial court erred in determining there was no triable issue of material fact because the loose screw itself did not prove medical negligence, (4) the trial court erred in refusing to appoint legal counsel, (5) Dr. Cross did not provide informed consent prior to the procedure, (6) the declaration by Dr. Cross's medical expert was insufficient to overcome a presumption of negligence because Dr. Cross's operation notes failed to show compliance with the implant manufacturer's instructions.

We conclude that the trial did not properly exercise informed discretion with respect to ensuring access to the courts when it denied Hulbert's motion for appointment of a medical expert. The trial court's statement that it lacked authority to appoint legal counsel requires remand to allow the trial court to consider and clarify which remedies

2

are appropriate in this case to protect Hulbert's right to meaningful access to the court. Accordingly, we reverse and remand with further instructions.

## FACTUAL AND PROCEDURAL HISTORY

### *Action for Medical Malpractice*

In July 2018, Hulbert filed a complaint that alleged a single cause of action for medical malpractice. An amended complaint was filed in March 2019. The medical malpractice cause of action alleged the following: In March 2016, Dr. Cross performed a radial head resection and arthroplasty on Hulbert's right elbow at the Shasta Regional Medical Center. Dr. Cross selected the manufacturer and type of implant, a "Biomet 44 x 14 mm radial head with a stem press fit." After the procedure, Dr. Cross signed an operation report describing his actions during the surgery. The operation report fails to note whether Dr. Cross inspected the implant, checked the set screw to ensure it was tightened properly, or indicate that he had tightened the screw at all.

After surgery, a screw came loose and lodged in Hulbert's elbow joint. This caused severe pain and damage to Hulbert's elbow joint, cartilage, and surrounding tissue. During the pendency of the action, Hulbert continued to experience severe pain.

### *Motion for Summary Judgment*

In February 2019, Dr. Cross filed a motion for summary judgment on grounds that he did not breach the appropriate standard of care and that Hulbert had not established causation. In support of the motion, Dr. Cross argued that the alleged medical cause of Hulbert's injuries does not entail the type of conduct that is within the common knowledge of laymen. Dr. Cross asserted that medical expert testimony is required. To this end, Dr. Cross introduced the declaration of orthopedic surgeon, Thomas G. Sampson. Dr. Sampson reviewed the medical history and treatment of Hulbert and opined as follows:

3

"A.  Dr. Cross met the applicable standard of care in all aspects of his care and treatment of [Hulbert], including his pre-op care.  He provided [Hulbert] with the appropriate conservative care for the radial head fracture.  When that was unsuccessful, Dr. Cross assessed [Hulbert] with failed conservative care, and correctly considered a radial head arthroplasty.

"B.  On March 16, 2016, after obtaining [Hulbert's] consent, Dr. Cross appropriately performed the radial head resection and arthroplasty of the radial head.  He appropriately placed a Biomet 44 x 14 mm radial head with stem press fit.  Intra-articular visualization of the radial articular surfaces revealed displaced fractures with chondrolysis of the radial head, which were resected with a sagittal saw and removed.  The canal of the proximal radius was broached and definitive stem and head were appropriately impacted into place.  Trial reduction appeared to restore normal anatomy.  The elbow joint was stable, achieving full range of motion.

"C.  The outcomes of radial head arthroplasty are varied and failure may occur in the absence of negligence.  In this case, there was dissociation of the set screw and loosening of the stem of the component observed in the subsequent surgery, which are both based on mechanical stresses on the implant and not implantation technique.  It is my opinion to a degree of medical probability that Dr. Cross met all requirements of the standard of care when implanting the radial head arthroplasty."

Hulbert filed a handwritten memorandum of points and authorities in opposition to summary judgment.  Hulbert noted that Dr. Cross's postoperative notes failed to state that he checked to ensure that the set screw was properly tightened.  Hulbert further noted that Dr. Cross "failed to caution [him] as to any risk of mechanical stress or the potential of the set screw [becoming] loose."  On the issue of the screw, Hulbert asserted that there are implants available that do not include the use of a set screw.  On these bases, Hulbert argued that Dr. Cross had been negligent.

4

Hulbert also argued that Dr. Cross's expert witness declaration is "vague, speculative, and lacks factual basis." Hulbert pointed out that the declaration did not provide a basis for concluding that Dr. Sampson is familiar with elbow implants, their components, or specifically the Biomet implant used in this case. Dr. Sampson's declaration neither describes the "varied results" that can result from elbow implants nor what sort of "mechanical stresses" could have caused the injury. Hulbert also argued a lack of consent in that he was not properly advised of the risks of the particular implant chosen.

In a separate statement of disputed facts, Hulbert asserted that Dr. Cross did not ensure that he properly tightened the set screw and did not provide Hulbert a choice of implants. Hulbert also asserted it was undisputed that there are implants that do not require a screw, only Dr. Cross could have foreseen the risk of the screw coming loose, and the screw – by definition – needed to be tightened and checked as part of the operation. Hulbert also argued that he needed to be able to cross-examine Dr. Sampson about his declaration.

### *Motion for Appointment of Legal Counsel and Medical Expert*

In April 2019, Hulbert filed a motion for court appointment of legal counsel and a medical expert. In support of the motion, Hulbert explained that his status as a prisoner prevented him from the same access to free legal services as other indigents, the inability to seek witnesses on his behalf, and his limited education and intelligence level. Dr. Cross opposed the motion. Dr. Cross argued that as a plaintiff, Hulbert was entitled to counsel only in "exceptional circumstances" under federal law and that he was competent to represent himself. Dr. Cross further argued that Hulbert "cites no authority to support his position" that the trial court had discretion to appoint a medical expert for him.

The trial court denied Hulbert's motion for appointment of legal counsel and a medical expert. After citing and quoting from the cases providing the trial court

5

discretion to consider the remedies that are available to protect an indigent prisoner's right of meaningful access to the courts, the trial court issued a tentative ruling as follows:

"Here, [Hulbert] claims he is indigent but has not provided sufficient evidence. Based on his imprisonment and his fee waivers for the purposes of this motion the Court will assume that he is indeed indigent. He also appears to have a bona fide claim since he is a Plaintiff seeking damages for medical malpractice. In finding that he has a bona fide claim the Court makes no determination as to the probability that Plaintiff will prevail on the merits. Based on these findings the Court must now determine in its discretion the appropriate method to ensure meaningful access to the Court.

". . . [Hulbert] conducted himself appropriately at the settlement conference when he appeared by telephone, he admittedly has access to a law library, he has successfully filed motions and conducted discovery. Based on his writings, [Hulbert] is literate, articulate and intelligent. In conclusion, [Hulbert] can adequately represent himself. The appointment of counsel is unnecessary. . . .

"As for the request to appoint an expert, [Hulbert] has not provided any authority that the Court is required or has discretion to appoint a medical expert. That request is denied."

The trial court adopted the tentative ruling as its order. In adopting the tentative ruling as its order, the trial court further explained: "[Hulbert] states he believes California has established a standard regarding the necessity of medical experts in medical malpractice cases. *The Court states it does not have the authority to appoint counsel, nor appoint an expert witness*, as addressed in the tentative ruling." (Italics added.)

6

In September 2019, the trial court granted summary judgment in favor of Dr. Cross. The trial court overruled Hulbert's objections to Dr. Sampson's declaration. In granting summary judgment, the trial court reasoned that "the uncontroverted declaration of an expert is sufficient to negate the element of negligence, and therefore supports the granting of a motion for summary judgment." In response to Dr. Sampson's declaration, the burden shifted to Hulbert to present evidence of a disputed issue of material fact. However, Hulbert "has failed to present any competent medical testimony from any expert regarding this action. The Court finds his own lay opinion is legally insufficient to create a triable issue of fact. In the instant case, without competent medical testimony establishing a triable issue of material fact as to standard of care, [Hulbert's] sole cause of action for medical negligence fails."

In October 2019, the trial court entered a judgment of dismissal from which Hulbert timely appeals.

## DISCUSSION

### I.

*Meaningful Access to Courts*

As the California Supreme Court has noted, "there is no dispute that prisoners have a constitutional right of access to the courts (*Payne v. Superior Court* [(1976)] 17 Cal.3d [908,] 914) and that 'absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard' (*Boddie v. Connecticut* (1971) 401 U.S. 371, 377, [28 L.Ed.2d 113]) . . . ." (*In re Jesusa V.* (2004) 32 Cal.4th 588, 601.) The Penal Code codifies this right of access to the courts by declaring that incarcerated plaintiffs have the prerogative "[t]o initiate civil actions . . . ." (Pen. Code, § 2601, subd. (d).) This means that "a prisoner may not be deprived, by his or her inmate

status, of meaningful access to the civil courts if the prisoner is both indigent and a party to a bona fide civil action threatening his or her personal or property interests." (*Apollo v. Gyaami* (2008) 167 Cal.App.4th 1468, 1483 (*Apollo*).) Trial courts have broad discretion to implement measures designed to vindicate the right to fair access to the courts. (*Id.* at pp. 1483-1484, citing *Wantuch v. Davis* (1995) 32 Cal.App.4th 786, 792-793 (*Wantuch*).)

As *Apollo* explains, "while '[m]eaningful access to the courts is the "keystone" of an indigent prisoner's right to . . . prosecute bona fide civil actions,' such right ' "does not necessarily mandate a particular remedy" to secure access.' (*Wantuch, supra*, 32 Cal.App.4th at p. 792, citing Pen. Code, § 2601, subd. (e); see also *Yarbrough* [*v. Superior Court* (1985)] 39 Cal.3d [197,] 200-201; *Payne* [*v. Superior Court* (1976)] 17 Cal.3d [908,] 923.) For example, a prisoner may not compel the trial court to appoint counsel on his or her behalf. (*Wantuch, supra*, 32 Cal.App.4th at p. 793.) Nor may a prisoner ordinarily compel his or her appearance in court. (*Id.* at p. 794.) Nonetheless, several alternatives to those remedies are available to the trial courts in order to ensure indigent prisoner litigants are afforded meaningful access to the courts, including: '(1) deferral of the action until the prisoner is released ([*Payne* ], *supra*, 17 Cal.3d at p. 925); (2) appointment of counsel for the prisoner (*id.* at p. 924; [*Yarbrough*,] *supra*, 39 Cal.3d at pp. 200-201); (3) transfer of the prisoner to court (Pen. Code, §§ 1567, 2620); (4) utilization of depositions in lieu of personal appearances (Code Civ. Proc., § 1997; Pen. Code, §§ 2622-2623; *In re Bagwell* (1938) 26 Cal.App.2d 418, 420); (5) holding of trial in prison ([*Payne*], *supra*, 17 Cal.3d at p. 925); (6) conduct of status and settlement conferences, hearings on motions and other pretrial proceedings by telephone (cf. *In re Grimes* (1989) 208 Cal.App.3d 1175, 1182-1183); (7) propounding of written discovery; (8) use of closed circuit television or other modern electronic media; and (9) implementation of other innovative, imaginative procedures (Code Civ. Proc., § 128, subd. . . . (a)(5); cf. *Hernandez v. Whiting* (9th Cir. 1989) 881 F.2d 768, 770-771; *Poole*

*v. Lambert* (11th Cir.1987) 819 F.2d 1025, 1028).' " (*Apollo*, *supra*, 167 Cal.App.4th at p. 1483, quoting *Wantuch*, *supra*, 32 Cal.App.4th at pp. 792-793.) As pertinent to this case, "the discretionary appointment of an expert pursuant to Evidence Code section 730 is among the measures available to trial courts to ensure indigent prisoner litigants are afforded meaningful access to the courts." (*Smith v. Ogbuehi* (2019) 38 Cal.App.5th 453, 459 (*Smith*).)

Trial courts must be guided by " 'principles of providing in propria persona litigants with meaningful access to the courts and of deciding bona fide civil actions on their merits.' " (*Smith, supra*, 38 Cal.App.5th at p. 469, quoting *Apollo*, *supra*, 167 Cal.App.4th at p. 1487.) "The exercise of a trial court's discretion is guided by a three-step inquiry established in published appellate decisions. (*Apollo*[, *supra*,] 167 Cal.App.4th [at pp.] 1485-1487 . . . ; *Wantuch* [, *supra*,] 32 Cal.App.4th [at p.] 792 . . . .) First, the trial court determines whether the prisoner is indigent. Second, the court determines whether the lawsuit involves a bona fide threat to the inmate's personal or property interests. If both conditions are satisfied, the trial court *must* consider the measures available to protect appellant's right of meaningful access to the courts, including the appointment of counsel." (*Smith*, *supra*, 38 Cal.App.5th at p. 458, italics added.) Ultimately, "a trial court must examine the totality of the circumstances when making the discretionary determination of whether an inmate's access is being impeded." (*Id.* at p. 470.)

## II.

### *Appointment of Medical Expert*

The order denying the motion for appointment of a medical expert shows that the trial court did not understand the nature of its discretion to safeguard Hulbert's right of access to the courts. The trial court's order errs in three respects: First, the trial court erroneously assumed that Hulbert had to cite legal authority to support the appointment

9

of a medical expert. Second, the trial court denied the motion for appointment of a medical expert while requiring such expert evidence to prosecute Hulbert's action. Third, the trial court mistakenly believed it did "not have the authority to appoint . . . an expert witness . . . ." Taken together, these errors require reversal and remand to allow the trial court to properly exercise its discretion with respect to Hulbert's motion for appointment of a medical expert.

### 1. *Hulbert's Lack of Citation to Authority*

The trial court erred in requiring Hulbert to cite legal authority in support of his motion for the appointment of a medical expert to support his single cause of action for medical malpractice.

The circumstances in *Smith* provide an apt illustration of this principle. *Smith* involved an indigent incarcerated plaintiff who brought an action for medical malpractice alleged to have been committed by a doctor and a nurse practitioner who provided care as employees for the Pleasant Valley State Prison. (*Smith*, *supra*, 38 Cal.App.5th at p. 458.) The self-represented plaintiff in *Smith* filed a motion for appointment of counsel based on – among other things – "his limited ability to investigate the facts, obtain discovery and get expert witnesses." (*Ibid.*) The trial court denied the motion and issued a written order that "stated Smith had 'failed to provide any authority that would support the request that this court appoint an attorney in this civil action.' " (*Id.* at p. 471.) The Court of Appeal reversed. (*Id.* at p. 478.) The *Smith* court held that ensuring meaningful access to courts for indigent incarcerated plaintiffs requires the trial courts to recognize their own discretionary authority to appoint an expert or legal counsel "even when the indigent litigant does not cite cases such as *Apollo* and *Wantuch* and does not refer to the right of access to the courts as the basis for that discretionary authority." (*Id.* at p. 459.)

Here, as in *Smith*, the self-represented plaintiff filed a motion for the appointment of a medical expert and legal counsel. The motion explained that Hulbert's status as an incarcerated plaintiff prevented him from being able to seek witnesses of his own behalf

10

and having the same access to legal services as nonincarcerated indigents have. The motion noted that allowing Hulbert to personally appear in court was not the equivalent of having legal counsel to argue his claim. Although the motion did not mention his rights of access to the courts or cite legal authority such as *Apollo*, *supra*, 167 Cal.App.4th 1468, or *Wantuch, supra,* 32 Cal.App.4th 786, Hulbert explained how appointment of legal counsel and a medical expert would help him bring his claim. Hulbert's motion and its accompanying explanation of the need for legal counsel and a medical expert invoked the trial court's duty to properly exercise its discretion to provide meaningful access to the courts. (*Smith*, *supra*, 38 Cal.App.5th at pp. 474-475.) The trial court's denial of Hulbert's motion for an expert on grounds that he did not cite legal authority constitutes error.

### 2. *Discretion to Appoint a Medical Expert*

The trial court's written order shows that it found that Hulbert is indigent and has a bona fide claim of medical malpractice. " '[A] trial court does not have discretion to choose no remedy in cases where the prisoner's civil action is bona fide and his or her access to the courts is being impeded.' " (*Smith*, *supra*, 38 Cal.App.5th 453, 468, quoting *Apollo, supra*, 167 Cal.App.4th at p. 1484, fn. omitted.) Thus, the trial court erred when it denied Hulbert's motion for appointment of a medical expert even while requiring medical expert testimony to oppose a motion for summary judgment

Again, *Smith* provides a useful illustration on this point. The trial court in *Smith* "stated it was without authority to appoint an attorney for a plaintiff in a civil case, and denied the motion. Subsequently, the trial court granted defendants' motion for summary judgment because Smith, as he predicted, did not obtain a medical expert's declaration contradicting the opinion of defendants' expert that the care provided Smith met the applicable standard of care." (*Smith*, *supra*, 38 Cal.App.5th at p. 458.) The *Smith* court reversed, holding that where a prisoner establishes both indigency and that the legal action involves a bona fide threat to the inmate's personal or property interests, "the trial

11

court must consider the measures available to protect appellant's right of meaningful access to the courts, including the appointment of counsel. Where the indigent prisoner's civil action is bona fide and his or her access to the court is being impeded, *a trial court must provide a remedy; it may not choose to do nothing*." (*Ibid.*, italics added.)

Hulbert's cause of action for medical malpractice requires proof regarding the standard of care. "Both the standard of care and a defendant's breach must normally be established by expert testimony in a medical malpractice case." (*Avivi v. Centro Medico Urgente Medical Center* (2008) 159 Cal.App.4th 463, 467.) By denying Hulbert's request for the appointment of a medical expert, the trial court effectively blocked Hulbert's access to the courts for his sole claim by requiring the very thing the trial court denied to him.

The trial court's order does not indicate that the court considered any alternatives or "other innovative, imaginative procedures" to ensure access to justice for a bona fide claim. (*Apollo*, *supra*, 167 Cal.App.4th at p. 1483.) Instead, the trial court found only that Hulbert had not cited legal authority showing that the court "has discretion to appoint a medical expert." " '[A] court that is unaware of its discretionary authority cannot exercise its informed discretion.' " (*Smith, supra*, 38 Cal.App.5th at pp. 474-475, quoting *People v. Brown* (2007) 147 Cal.App.4th 1213, 1228.) Accordingly, the trial court did not property exercise its discretion.

Dr. Cross points out that, under the Evidence Code, Hulbert is not entitled to the appointment of a medical expert as a matter of law. Evidence Code section 730 allows, but does not require, the appointment of a medical expert when it appears necessary to the trial court. In pertinent part, Evidence Code section 730 provides: "When it appears to the court, at any time before or during the trial of an action, that expert evidence is or may be required by the court or by any party to the action, the court on its own motion or on motion of any party may appoint one or more experts to investigate, to render a report as may be ordered by the court, and to testify as an expert at the trial of the action relative

12

to the fact or matter as to which the expert evidence is or may be required." Under Evidence Code section 730, it is well settled "that a trial court has discretion in the appointment and selection of expert witnesses." (*In re Daniel C. H.* (1990) 220 Cal.App.3d 814, 833.) The problem in this case is that the trial court did not properly exercise its discretion to consider appointing a medical expert for Hulbert. Accordingly, the matter must be reversed and remanded to allow the trial court to exercise its discretion to appoint a medical expert in accordance with well-settled principles of access to the courts.

### III.

### *Appointment of Legal Counsel*

Hulbert argues that the trial court erred in denying his motion for appointment of legal counsel. Hulbert contends that the appointment of legal counsel was necessary because his action involved complexities beyond his ability to address – including tasks related to securing and presenting medical expert evidence. Hulbert reasons that the assistance of legal counsel is required, at least in part, "[d]ue to the ruling by the court this case required an expert witness, factual investigation beyond the capabilities of [Hulbert], [and that this action] was according to the court a complex case." Hulbert reiterates that he does not have the ability "to procure a medical expert, which is something that appointed counsel could do." Because the trial court's order is confusing as to whether it believed it had discretion to appoint legal counsel, the trial court is instructed on remand to clarify its exercise of discretion.

### 1. *The Trial Court's Order*

As a general rule, " '[t]he meaning and effect of a judgment is determined according to the rules governing the interpretation of writings generally.' (*People v. Landon White Bail Bonds* (1991) 234 Cal.App.3d 66, 76.) We conclude the same rules apply to the interpretation of a written order issued by a trial court. Under those rules, the

13

entire order is taken by its four corners and construed as a whole.  (*Ibid*.)  Also, the order's language is viewed in light of the facts and the issues before the court, and each statement is considered in its proper context."  (*Smith*, *supra*, 38 Cal.App.5th at pp. 473-474.)

Here, the trial court's order is internally inconsistent in addressing Hulbert's request for appointment of legal counsel.  The order incorporates the trial court's tentative ruling on Hulbert's request.  The tentative ruling cited California case law – including *Apollo*, *supra*, 167 Cal.App.4th 1468 and *Wantuch, supra,* 32 Cal.App.4th 786 – to explain that trial courts "must consider the remedies that are available to protect the litigant's right of meaningful access to the courts."  (See *Wantuch*, at pp. 792-793.)  After the trial court determined that Hulbert was indigent and had a bona fide claim, the tentative ruling stated that Hulbert was "literate, articulate and intelligent" and had "access to a law library" so that he was able to file motions and conduct discovery.  The trial court's tentative ruling found that Hulbert can "adequately represent himself" and proposed to deny the motion for appointment of legal counsel.

After adopting its tentative ruling, the trial court's order took a diametrically opposite approach.  The trial court's order stated that "*it does not have the authority* to appoint counsel . . . as addressed in the tentative ruling."  (Italics added.)  This flat denial of authority to appoint legal counsel does not reconcile with the apparent exercise of discretion recited in the incorporated tentative ruling.

### 2. *Discretion to Appoint Legal Counsel*

It is well settled that California courts have discretion to ensure that indigent prisoners who are plaintiffs in civil actions have the right of access to courts.  (*Smith*, *supra*, 38 Cal.App.5th at p. 468; *Wantuch, supra*, 32 Cal.App.4th at pp. 792-793.)  " 'Indeed, the California Supreme Court has suggested that, in certain cases, appointment of counsel may be the *only remedy* available to protect a prisoner litigant's right of meaningful court access:  "In an appropriate case, and as a last alternative, appointment

14

of counsel may be the only way to provide an incarcerated, indigent civil defendant with access to the courts for the protection of threatened personal and property rights." ' " (*Smith,* at p. 468, quoting *Apollo, supra*, 167 Cal.App.4th at p. 1484, fn. omitted.) This holding by the California Supreme Court runs counter to the trial court's statement that it lacked authority to appoint counsel for Hulbert.

In this case, we cannot conclude that the trial court properly considered the necessity of legal counsel because the trial court (1) did not consider the need for legal counsel in connection with the need for a medical expert and (2) declared it lacked authority to appoint counsel. (See *Smith*, *supra*, 38 Cal.App.5th at p. 458.) Accordingly, this matter must be remanded so that the trial court can clarify which remedies are appropriate in this case to protect Hulbert's right to meaningful access to the court. (*Id.* at p. 477.)[1]

## DISPOSITION

The judgment of dismissal and order denying Hulbert's motion for appointment of legal counsel and a medical expert are reversed and this matter is remanded for further

---

[1] Our conclusion that the trial court did not exercise properly informed discretion in ruling on Hulbert's motion for appointment of legal counsel and a medical expert obviates the need to consider whether the trial court erred in subsequently granting summary judgment in favor of Dr. Cross. Summary judgment was granted on the ground that Hulbert could not rely on his own lay opinion to rebut the medical expert declaration submitted by Dr. Cross. The right of access to the courts requires the trial court to properly exercise its discretion on the motion for appointment of a medical expert. Our conclusion relates only to the exercise of the trial court's discretion and does not express an opinion regarding what remedies might be appropriate or necessary to ensure access to the courts.

15

proceedings consistent with this opinion.  Hulbert shall recover his costs on appeal, if any.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

/s/<br>
HOCH, J.

We concur:

/s/<br>
HULL, Acting P. J.

/s/<br>
MURRAY, J.