Filed 2/1/23  Vanga v. Gluckman CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| RODERICK EARL VANGA,<br><br>    Plaintiff and Appellant,<br><br>  v.<br><br>RICHARD S. GLUCKMAN et al.,<br><br>    Defendants and Respondents. | B304687<br><br>Los Angeles County<br>Super. Ct. No. BC702702 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gregory W. Alarcon, Judge.  Conditionally reversed and remanded with directions.

Steven J. Cooper for Plaintiff and Appellant.

Cole Pedroza, Kenneth R. Pedroza, Matthew S. Levinson; Reback, McAndrews & Blessey, Raymond L. Blessey and Tracy D. Hughes for Defendants and Respondents.

————————————————

# INTRODUCTION

When plaintiff and appellant Roderick Earl Vanga, a federal prisoner, started to lose his eyesight, the prison called in a neurologist, Dr. Richard S. Gluckman, to examine him. But Vanga's treatment was delayed, and he ultimately went legally blind in both eyes. Vanga, acting in propria persona, sued defendants and respondents Dr. Gluckman and Richard S. Gluckman, M.D., Inc. (collectively Gluckman) for professional negligence, contending that Gluckman had unreasonably delayed providing a diagnosis and treatment plan to the prison, and, but for the delay, Vanga wouldn't have lost his sight.

Vanga, who was not only incarcerated and blind but also indigent, asked the trial court to appoint counsel to represent him. The court denied the request.[1] When Gluckman moved for summary judgment, Vanga moved for appointment of a medical expert. The court denied that request as well, holding that Vanga had not made a sufficient showing of necessity. The court held that Vanga's "claims that he is in custody, visually disabled, and indigent are not a sufficient basis alone for this court to exercise its discretion to appoint an expert at public expense . . . [and] there is no evidence that this action involves an extremely complicated area of medicine which would warrant an increased state interest for a court appointed expert." The court then granted summary judgment for Gluckman, holding that Vanga had not rebutted Gluckman's declaration that the doctor's actions fell within the standard of care because Vanga had not provided contrary expert testimony.

---

[1] Vanga has since obtained counsel.

On appeal, Vanga argues that the court's refusal to appoint a medical expert deprived him of meaningful access to the courts.[2]  We agree.  We therefore conditionally reverse the judgment and remand with directions.

## BACKGROUND

### 1.    Factual Background

Vanga was an inmate at the Federal Correctional Institute (FCI) Terminal Island when he began suffering vision loss. Gluckman, a board-certified neurologist, was brought in to examine him.

Gluckman examined Vanga's right eye on January 28, 2016.  Gluckman diagnosed Vanga with optic neuritis and prescribed intravenous injections of Solu-Medrol, a drug whose common name is Methylprednisolone, an anti-inflammatory steroid, for four or five days and that he begin taking Aubagio, whose common name is Teriflunomide, a medication used to treat multiple sclerosis.  Gluckman declared that he provided his diagnoses, suggestions, and other findings regarding the examination to the medical office at FCI Terminal Island on February 1, 2016.  But Venga's complaint alleges that the treatment plan was not delivered until February 16, 2016. In any event, treatment began on March 24, 2016.

Gluckman evaluated Vanga again on August 25, 2016, this time focusing on the left eye.  Gluckman again diagnosed Vanga with optic neuritis.  This time, he prescribed six months of intravenous injections of Solu-Medrol for two consecutive days

---

[2]    Because this issue is dispositive, we do not address Vanga's additional claims of error.

per month. Gluckman declared that he provided his diagnoses, suggestions, and other findings regarding the examination to the medical office at FCI Terminal Island on August 27, 2016. Venga, however, alleges that the treatment plan was not delivered to the prison until November 15, 2016. Treatment began on November 16, 2016.

Vanga is now legally blind in both eyes.

## 2. Complaint

Vanga filed the operative verified complaint on April 17, 2018, asserting professional negligence. He alleged that Gluckman delayed delivery of the two treatment plans to the prison for an unreasonable length of time and that these delays caused him to suffer permanent vision loss.

By his action, Vanga sought to recover general damages, compensatory damages, and costs of suit.

## 3. Summary Judgment Proceedings

Gluckman moved for summary judgment on the ground that the care and treatment provided to Vanga was within the applicable standard of care, and no act or omission by Gluckman caused or contributed to Vanga's injuries. Gluckman also argued that Vanga's claims were barred by the statute of limitations. Vanga opposed the motion, arguing that Gluckman's actions were not within the applicable standard of care. Vanga filed a concurrent request for appointment of a medical expert.

The court heard the motion on July 23, 2019. Vanga appeared telephonically. The court took under submission both Gluckman's motion for summary judgment and Vanga's request for expert witnesses. Then, on August 13, 2019, the trial court issued a written order denying Vanga's request for court-

4

appointed experts and granting the motion for summary judgment.

## 4.    Judgment and Appeal

Vanga filed a motion for reconsideration, which the court denied.

The court signed and entered a judgment in favor of Gluckman on January 2, 2020.  Vanga timely appeals.

## DISCUSSION

Vanga contends the court's refusal to appoint a medical expert to contest summary judgment deprived him of meaningful access to the courts.  We agree.

## 1.    Standard of Review

We review the denial of Vanga's motion for appointment of a medical expert for abuse of discretion.  (*Wantuch v. Davis* (1995) 32 Cal.App.4th 786, 792–793 (*Wantuch*); *People v. Garcia* (2016) 5 Cal.App.5th 640, 655.)

The standard of review of an order granting summary judgment is well established.  "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute."  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)  The moving party "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law."  (*Id.* at p. 850; Code Civ. Proc., § 437c, subd. (c).)  The pleadings determine the issues to be addressed by a summary judgment motion.  (*Nieto v. Blue Shield*

5

*of California Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 74.)

On appeal from a summary judgment, we review the record de novo and independently determine whether triable issues of material fact exist. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) We resolve any evidentiary doubts or ambiguities in favor of the party opposing summary judgment. (*Saelzler,* at p. 768.) In performing an independent review of the granting of summary judgment, "we follow the traditional three-step analysis. 'We first identify the issues framed by the pleadings, since it is these allegations to which the motion must respond. Secondly, we determine whether the moving party has established facts which negate the opponents' claim and justify a judgment in the movant's favor. Finally, if the summary judgment motion prima facie justifies a judgment, we determine whether the opposition demonstrates the existence of a triable, material factual issue. [Citation.]' " (*Shamsian v. Atlantic Richfield Co.* (2003) 107 Cal.App.4th 967, 975.) "We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale." (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 630.)

## 2. The Right to Meaningful Access to the Courts

The California Supreme Court has held that "there is no dispute that prisoners have a constitutional right of access to the courts [citation] and that 'absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard' [citation] . . . ." (*In re*

*Jesusa V.* (2004) 32 Cal.4th 588, 601.) The Penal Code codifies this right of access to the courts by declaring that incarcerated plaintiffs may "initiate civil actions . . . ." (Pen. Code, § 2601, subd. (d).) This means that "a prisoner may not be deprived, by his or her inmate status, of meaningful access to the civil courts if the prisoner is both indigent and a party to a bona fide civil action threatening his or her personal or property interests." (*Apollo v. Gyaami* (2008) 167 Cal.App.4th 1468, 1483 (*Apollo*).)

Trial courts have broad discretion to fashion measures designed to vindicate the right to fair access to the courts. (*Apollo*, *supra*, 167 Cal.App.4th at pp. 1483–1484, citing *Wantuch*, *supra*, 32 Cal.App.4th at pp. 792–793.) In exercising their discretion, courts must be guided by " 'principles of providing in propria persona litigants with meaningful access to the courts and of deciding bona fide civil actions on their merits.' " (*Smith v. Ogbuehi* (2019) 38 Cal.App.5th 453, 469 (*Smith*), quoting *Apollo*, at p. 1487.)

"The exercise of a trial court's discretion is guided by a three-step inquiry established in published appellate decisions. [Citations.] First, the trial court determines whether the prisoner is indigent. Second, the court determines whether the lawsuit involves a bona fide threat to the inmate's personal or property interests. If both conditions are satisfied, the trial court must consider the measures available to protect appellant's right of meaningful access to the courts, including the appointment of counsel." (*Smith*, *supra*, 38 Cal.App.5th at p. 458.) Ultimately, "a trial court must examine the totality of the circumstances when making the discretionary determination of whether an inmate's access is being impeded." (*Id.* at p. 470.)

Trial courts do not have discretion to do nothing " 'where the prisoner's civil action is bona fide and his or her access to the courts is being impeded,' " but there are few bright-line rules. (*Smith, supra,* 38 Cal.App.5th at p. 468)  Although " '[m]eaningful access to the courts is the "keystone" of an indigent prisoner's right to . . . prosecute bona fide civil actions,' such right ' "does not necessarily mandate a particular remedy" to secure access.' [Citations.]  For example, a prisoner may not compel the trial court to appoint counsel on his or her behalf. [Citation.]  Nor may a prisoner ordinarily compel his or her appearance in court.  [Citation.]  Nonetheless, several alternatives to those remedies are available to the trial courts in order to ensure indigent prisoner litigants are afforded meaningful access to the courts, including:  '(1) deferral of the action until the prisoner is released [citation]; (2) appointment of counsel for the prisoner [citations]; (3) transfer of the prisoner to court [citations]; (4) utilization of depositions in lieu of personal appearances [citations]; (5) holding of trial in prison [citation]; (6) conduct of status and settlement conferences, hearings on motions and other pretrial proceedings by telephone [citation]; (7) propounding of written discovery; (8) use of closed circuit television or other modern electronic media; and (9) implementation of other innovative, imaginative procedures. [Citations.]' " (*Apollo, supra,* 167 Cal.App.4th at p. 1483.)  As relevant here, "the discretionary appointment of an expert pursuant to Evidence Code section 730 is among the measures available to trial courts to ensure indigent prisoner litigants are afforded meaningful access to the courts." (*Smith, supra,* 38 Cal.App.5th at p. 459.)

### 3. Proceedings Below

Alongside his opposition to Gluckman's motion for summary judgment, Vanga filed a request for appointment of a medical expert under Evidence Code section 730. Citing *Apollo*, *supra*, 167 Cal.App.4th 1468, Vanga "specifically request[ed] an Ophthalmologist, and/or a Neuro-Ophthalmologist, and/or a Visual Scientist, to investigate specific medical details presented in the instant action, and subsequently prepare a report for the Court regarding their findings." He included a supporting declaration in which he swore that he was incarcerated in federal custody, legally and permanently blind in both eyes, and "indigent and without funding to afford an expert witness to corroborate the applicable standard of care as practiced by the prevailing medical community regarding treatment of optic inflammatory conditions. Also, the consequence of non-compliance with said standard." Due to these disabilities, he declared himself "unable to properly and effectively litigate in the instant action without requisite expert testimony."

Considering the appointment motion alongside Gluckman's summary judgment motion, the court denied the request. First, the court declined to exercise its discretion under the authority granted to it by Evidence Code section 730.[3] The court explained:

---

[3] Evidence Code section 730 provides: "When it appears to the court, at any time before or during the trial of an action, that expert evidence is or may be required by the court or by any party to the action, the court on its own motion or on motion of any party may appoint one or more experts to investigate, to render a report as may be ordered by the court, and to testify as an expert at the trial of the action relative to the fact or matter as to which the expert evidence is or may be required. The court

9

"It is within the trial court's discretion under Evidence Code
§ 730 to determine whether an expert is needed. (*Collins v.
Superior Court* (1977) 74 Cal.App.3d 47, 52 [(*Collins*)].) 'There is
nothing in our law which makes it mandatory for a trial court to
appoint a medical expert in any case,' and as is the case with any
use of public funds to assist a litigant, there must be a showing of
necessity. (*Pink v. Slater* (1955) 131 Cal.App.2d 816, 817–818
[(*Pink*)]; *Corenevsky v. Superior Court* (1984) 36 Cal.3d 307, 320
[(*Corenevsky*)].) [¶] Under the facts and circumstances of this
case, plaintiff has not made a sufficient showing of necessity.
Plaintiff has not indicated with any specificity the issues
requiring expert testimony or how the testimony will be helpful
to the trier of fact."[4]

---

may fix the compensation for these services, if any, rendered by
any person appointed under this section, in addition to any
service as a witness, at the amount as seems reasonable to the
court."

[4] Although the court is correct that Evidence Code section
730 is not prescriptive, each case the court cited predates *Apollo*
and *Wantuch* by several decades, and none concerns the right of
access to the courts by indigent civil plaintiffs. *Collins* involved
the court's denial of a request to appoint an expert in a
dependency proceeding to interpret the statements made by an
offending mother to her lawyer. (*Collins*, *supra*, 74 Cal.App.3d at
pp. 51–52.) *Pink* was a medical malpractice case in which the
appellate court stated, without elaboration, that appointment of
an expert was not absolutely required under the statute and "[n]o
abuse of discretion appears here." (*Pink*, *supra*, 131 Cal.App.2d
at p. 818.)
Finally, in *Corenevsky*, a death penalty case, the Supreme
Court held that the trial court erred by not approving defense

10

Turning to Vanga's assertion of his right of access to the courts, the court wrote: "Further, although plaintiff cites to *Apollo*[, *supra*, 167 Cal.App.4th at p.] 1487, in asserting that the court has an obligation to ensure that poor and incarcerated litigants have meaningful access to the courts, *Apollo* also noted that 'while "[m]eaningful access to the courts is the "keystone" of an indigent prisoner's right to . . . prosecute bona fide civil actions," such right does not necessarily mandate a particular remedy to secure access. [Citations omitted.] For example, a prisoner may not compel the trial court to appoint counsel on his or her behalf.' (*Id*. at [p.] 1483.) Plaintiff's claims that he is in custody, visually disabled, and indigent are not a sufficient basis alone for this court to exercise its discretion to appoint an expert at public expense. Lastly, there is no evidence that this action involves an extremely complicated area of medicine which would warrant an increased state interest for a court appointed expert. Plaintiff's request for a court appointed expert, therefore, is denied."

counsel's request for court-appointed law clerks. (*Corenevsky*, *supra*, 36 Cal.3d at pp. 318–320.) Although the court noted that Evidence Code section 730 does "not directly provide for court-ordered investigators, law clerks, or enumerated experts other than expert witnesses generally," it emphasized that "the right to such services is to be inferred from at least two statutes respecting an indigent defendant's statutory right to legal assistance; and more fundamentally, such court-ordered defense services may be required in order to assure a defendant his constitutional right not only to counsel, but to the effective assistance of counsel." (*Id*. at p. 319, fn. omitted.)

In short, the trial court did not disagree that Vanga was indigent, incarcerated, and blind or that he had a bona fide claim of medical malpractice. Instead, the court denied the motion based on its conclusion that Vanga had not made a sufficiently specific showing of necessity.

The court then proceeded to Gluckman's motion for summary judgment. It spent a page laying out Vanga's allegations and the elements of medical malpractice, then noted: " 'Both the standard of care and defendants' breach must normally be established by expert testimony in a medical malpractice case.' [Citation.] [¶] Thus, in a medical malpractice case, '[w]hen a defendant moves for summary judgment and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence.' [Citation.] An expert declaration, if uncontradicted, is conclusive proof as to the prevailing standard of care and the propriety of the particular conduct of the health care provider. [Citation.] '[A]n opinion unsupported by reasons or explanations does not establish the absence of a material fact issue for trial, as required for summary judgment.' [Citations.] The absence of opinion evidence on this issue is fatal to the plaintiff's cause of action. [Citation.]"

The court explained that here, "Gluckman submit[ted] his own expert declaration opinion based on his education, training, experience, and review of materials, that [he] met the applicable standard of care at all times during the care and treatment of plaintiff. [Citation.] Dr. Gluckman testifies as both a fact witness and an expert witness."

12

After reviewing Gluckman's declaration, the court concluded: "The court, therefore, finds that based on defendants' evidence, Dr. Gluckman's treatment of plaintiff was within the applicable standard of care, and nothing he did or failed to do substantially contributed to plaintiff's injuries. [Citation.] The burden shifts to plaintiff to offer contrary expert testimony demonstrating that the defendant's care and treatment did fall below the standard of care. [Citation.]"

Although the court acknowledged Vanga's "conten[tion] that there are disputed issues of fact concerning Dr. Gluckman's alleged failure to adhere to acceptable standards of care," it emphasized that Vanga "fail[ed] to provide any expert evidence to contradict defendants' evidence that provides that Dr. Gluckman's conduct fell within the applicable standard of care." And although Vanga had attempted to fulfill the expert-witness requirement by presenting "alleged statements made by various other medical professionals," these statements were "not expert opinion and [were] insufficient alone to establish a triable issue of material fact."[5]

To be sure, Vanga also attempted, in the alternative, to proceed without an expert by arguing that "the alleged conduct concerns matters of common knowledge which does not require

_____

[5]      In his declaration in support of his opposition to Gluckman's motion for summary judgment, Vanga stated: "I am aware of the contingent requirement for conflicting expert evidence in a malpractice/negligence action, and as a result, I have provided conflicting medical evidence to the Defendant during the course of pretrial, and now said documents are presently part of the record." The declaration attached medical records from other treating physicians.

13

expert evidence . . . ." But, the court rejected that approach, emphasizing that "issues concerning plaintiff's diagnosis and medication dosage are matters that are peculiarly within the knowledge of experts and can only be established by their expert evidence. [Citation.] Thus, plaintiff's claims concerning Dr. Gluckman's conduct falling below the applicable standard of care requires expert testimony. [Citation.]"

As to causation, the court noted that Vanga had provided letters from prison medical staff stating that they did not receive diagnostic reports from Gluckman until weeks or months after Gluckman claimed to have sent them. But the court held, "this is not evidence that any conduct by Dr. Gluckman caused a delay, or that such delay caused any harm to plaintiff." Since Gluckman had declared that Vanga's vision loss was permanent by the time Gluckman examined him the second time, "[t]herefore, there is no expert evidence that any alleged delay by Dr. Gluckman in providing his suggestions, diagnoses, or findings to the FCI Terminal Island medical office in any way caused plaintiff harm."

In sum, the court concluded: "Based on the foregoing, defendants' expert's declaration is conclusive proof as to the prevailing standard of care and the propriety of Dr. Gluckman's conduct under the circumstances, and plaintiff's absence of evidence on this issue is fatal to his cause of action. [Citation.] Defendants, consequently, are entitled to summary judgment. [Citation.]"

4. **The court abused its discretion by denying Vanga's motion for a medical expert.**

" '[A] trial court does not have discretion to choose *no remedy* in cases where the prisoner's civil action is bona fide and

14

his or her access to the courts is being impeded.' " (*Smith*, *supra*, 38 Cal.App.5th at p. 468, quoting *Apollo*, *supra*, 167 Cal.App.4th at p. 1484, fn. omitted.)  Here, the court erred when it denied Vanga's motion for appointment of a medical expert even while requiring medical expert testimony to oppose a motion for summary judgment.  (*Hulbert v. Cross* (2021) 65 Cal.App.5th 405, 416 (*Hulbert*).)

*Smith* is instructive.  In that case, the trial court "stated it was without authority to appoint an attorney for a plaintiff in a civil case, and denied the motion.  Subsequently, the trial court granted defendants' motion for summary judgment because Smith, as he predicted, did not obtain a medical expert's declaration contradicting the opinion of defendants' expert that the care provided Smith met the applicable standard of care." (*Smith*, *supra*, 38 Cal.App.5th at p. 458.)

The *Smith* court reversed, holding that where a prisoner establishes both indigence and that the legal action involves a bona fide threat to the inmate's personal or property interests, "the trial court must consider the measures available to protect appellant's right of meaningful access to the courts, including the appointment of counsel.  Where the indigent prisoner's civil action is bona fide and his or her access to the court is being impeded, *a trial court must provide a remedy; it may not choose to do nothing*." (*Smith, supra,* 38 Cal.App.5th at p. 458, italics added.)

Likewise, in *Hulbert*—a case published after the trial court's denial of rehearing in this matter—the appellate court reversed the denial of an indigent litigant's request to appoint an expert on summary judgment in a medical malpractice case. (*Hulbert*, *supra*, 65 Cal.App.5th 405.)  *Hulbert* reasoned that the

15

plaintiff's "cause of action for medical malpractice requires proof regarding the standard of care. 'Both the standard of care and a defendant's breach must normally be established by expert testimony in a medical malpractice case.' [Citation.] By denying [the plaintiff's] request for the appointment of a medical expert, the trial court effectively blocked [his] access to the courts for his sole claim by requiring the very thing the trial court denied to him." (*Id*. at pp. 416–417.)

To be sure, in both *Smith* and *Hulbert*, the trial courts operated under the mistaken belief that they lacked discretion to appoint a medical expert. (*Smith*, *supra*, 38 Cal.App.5th at p. 458; *Hulbert*, *supra*, 65 Cal.App.5th at p. 417.) Here, however, the court understood its authority. Nevertheless, we find *Smith* and *Hulbert* persuasive and adopt their reasoning.

The parties do not dispute that Vanga was an indigent prisoner with a non-frivolous malpractice claim against Gluckman. To prevail on summary judgment, Vanga was required to present the testimony of a medical expert, which he could not afford. Unlike Gluckman, Vanga was not a doctor and could not pen such a declaration himself. Vanga attempted to meet the requirement by presenting evidence from people who, though not acting as expert witnesses, possessed the requisite expertise. He also presented a theory under which he could prevail without expert testimony. But ultimately, recognizing "the contingent requirement for conflicting expert evidence in a malpractice/negligence action," Vanga asked the court to appoint an expert for him. The court held that it was impossible for Vanga to prevail on summary judgment without expert testimony, but nonetheless denied the request. On these facts,

16

we conclude the court abused its discretion and denied Vanga meaningful access to the courts.

## 5.     The error was prejudicial.

*Wantuch*, *Apollo*, and their progeny do not establish the standard of prejudice appellants must meet when they have been deprived of meaningful access to the courts.  In general, however, California's doctrine of reversible error requires appellants to affirmatively demonstrate "the error complained of has resulted in a miscarriage of justice" in order to obtain relief on appeal.  (Cal. Const., art. VI, § 13; see Code Civ. Proc. § 475 [civil errors not affecting substantial rights].)

"The phrase 'miscarriage of justice' has a settled meaning in our law, having been explained in the seminal case of *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*).  Thus, 'a "miscarriage of justice" should be declared only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.'  (*Id.* at p. 836.)  'We have made clear that a "probability" in this context does not mean more likely than not, but merely *a reasonable chance*, more than an *abstract possibility*.'  [Citation.]" (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800; see *id.* at pp. 801–802 [*Watson* standard applies to civil cases and is "essentially congruent with" Code Civ. Proc., § 475].)

We conclude the error here was prejudicial.  The court's order granting summary judgment for Gluckman rested entirely on Vanga's lack of expert testimony to rebut Gluckman's declaration.  Present counsel has represented that he is in touch with potential experts whose initial impression is that

Gluckman's actions may have fallen below the requisite standard of care and caused Vanga's injuries.[6]  As the court's order made clear its ruling was based not on Vanga's lack of countervailing facts but rather the missing expert interpretation of those facts, we conclude it is reasonably likely Vanga would have achieved a better result if the court had appointed an expert.

## DISPOSITION

The judgment of dismissal is reversed and the matter is remanded with directions to vacate the order denying reconsideration and conditionally vacate the order granting summary judgment.  Upon remand, the court is directed to appoint a medical expert selected by counsel for Vanga to review Vanga's records and assist in opposing summary judgment.

---

[6]  "I have spoken to at least one Physician and other members of the medical community who have opined that there is in fact a likelihood that medical factual premises and opinions exist which were not presented to the court in opposition to Defendant's Motion For Summary Judgment as Plaintiff did not have the necessary resources, skill or time to present them, which facts and opinions would constitute new evidence to the extent that they had never been secured or presented in the case.  These facts and opinions pertaining to the issues before the court concerning the standard of care for Ophthalmologists similarly situated to and practicing in the same community [as] Defendant in this case, as well as causation of damages to the Plaintiff.  Although I am informed and believe that these facts and opinions exist and constitute new factual evidence, I am not yet in a position to present them unless or until Plaintiff's Motion For Reconsideration is granted on such terms as to make realistic and practical to engage in the acts of obtaining such and presenting them to the court."

If, upon reviewing the expert's declaration and any supplemental summary judgment briefing the court considers appropriate, the court concludes Vanga has raised a triable issue of material fact, the court shall enter a new order denying the motion for summary judgment.  If the court concludes no triable issue exists, the court shall reinstate the judgment.  We express no view concerning whether Vanga will be able to raise a triable issue upon remand.  Vanga is awarded his costs, if any, on appeal.


                    HARUTUNIAN, J.*

We Concur:


     STRATTON, P. J.


     WILEY, J.

---

\*      Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.